Roy David **HARE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42786.

Court of Criminal Appeals of Texas.

July 15, 1970.

Rehearing Denied Oct. 21, 1970.

Second Rehearing Denied Dec. 9, 1970.

---

Kilgore, Cole & Garrett, by W. W. Kilgore, Cullen, Edwards, Williams & Stevenson, Clarence N. Stevenson, Victoria, for appellant.

William C. Sparks, Dist. Atty., D. F. Martinak, Asst. Dist. Atty., Victoria, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

The offense is murder; the punishment, life.

The indictment alleged that appellant did, on or about August 11, 1967, voluntarily and with malice aforethought kill Billye Sue Zandonatti by shooting her with a gun.

A preliminary trial on the issue of present insanity (competency to make a rational defense) on February 21, 1968, resulted in a jury verdict finding appellant was insane; that he required hospitalization in a mental hospital; and resulted in his commitment to Rusk State Hospital.

About a year later (the exact time not being shown in the record) appellant was "certified sane by the hospital," and a jury empaneled in the trial court found him sane.

Thereafter, on April 14, 1969, appellant was tried before a jury on his plea of not guilty on the charge of murder.

The jury rejected appellant's defense of insanity; found that he was sane at the time of the offense and at the time of his trial, and that he was guilty of the offense of murder with malice aforethought, as charged in the indictment.

Having heard the evidence adduced on the issue of punishment, the court's charge and argument of counsel, the same jury rejected appellant's motion for probation and assessed his punishment at life imprisonment in the State Penitentiary.

Appellant's brief filed in the trial court set out thirty-eight grounds of error. We deem it necessary to discuss only the four of these grounds which are urged in appellant's brief filed in this court. Other grounds of error are overruled as reflecting no reversible error.

Ground of error No. 1 relates to the court's charge on insanity. It complains of Paragraph 13 of the charge in which the jury was instructed:

"The insanity must have existed at the very time of the commission of the offense, if the same was committed, and the mind must have been so dethroned of reason as to deprive the person accused of a knowledge of the nature and consequences of the particular act done, if any, *and* of the rightness and wrongness of the particular act done, if any, at the time of the commission of the same." (Emphasis added)

What appellant's brief sets out as a proper charge on insanity was given the jury in the preceding paragraph, 12, of the court's charge which reads, in part:

" * * * To establish a defense on the ground of insanity the defendant must prove, not beyond a reasonable doubt but by a preponderance of the evidence that at the time of committing the alleged act the defendant was laboring under such defect of reason and incapacity of the mind as not to know the nature and quality and consequence of the act he was doing at the time he was doing it; or if he did know, that he did not know that he was doing wrong,—that is that he did not know the difference between right and wrong as to the particular act charged against him."

Also, in applying the law the court instructed the jury that if they found and believed beyond a reasonable doubt that appellant voluntarily and with malice aforethought killed the deceased by shooting her with a gun,

" * * * but you believe from the preponderance of the evidence that at the very time he committed the act, if he did, the defendant, Roy David Hare, was laboring under such defect of reason and incapacity of the mind as not to know the nature and quality and consequences of the act he was doing, at the time he was doing it, or if he did know, that he did not know he was doing wrong, that is, that he did not know the difference between right and wrong, as to the particular act charged against him, at the time he was doing it, then you will find him not guilty on the grounds of insanity as of the time of the alleged offense, if any, and say so by your verdict * *."

■ Viewing the charge as a whole the error, if any, is not such as to call for reversal. Art. 36.19 Vernon's Ann.C.C.P.

Ground of error No. 24 complains of the sustaining of the state's objection which resulted in the exclusion of testimony of the witness Bobbie Sullivan, sister of appellant, with regard to the physical appearance and conduct of appellant in May 1967, when she was in Port Neches.

The bill of exception reflects the following testimony which appellant was not permitted to elicit from this witness before the jury.

"A. * * * he was real fidgety and extremely upset, and he cried the biggest part of that day.

* * * * * *

"A. He shook, his body seemed—his whole body seemed to shake.

\* \* \* \* \* \*

"Q. Do you know whether or not he slept that night?

"A. He didn't sleep.

"Q. All right. Do you know whether or not he ate anything that whole day, or that whole night?

"A. No, sir. He did not eat—yes, sir, he did not eat.

"Q. All right. Now, did you see him the next day?

"A. Yes.

"Q. Would you tell us, please, what parts of the day you saw him the next day?

"A. That morning, and right around— I was there that morning, and around noon I went to the hospital to visit my sister-in-law. And it was somewhere around 3:00 o'clock I came back and stayed there till around 6:00.

"Q. All right. And what did you do at 6:00?

"A. I came back to Placedo.

"Q. All right. With regard to his appearance and conduct on that day, could you tell us what you observed?

"A. Yes. He was withdrawn. He didn't seem like he wanted to talk to anybody.

\* \* \* \* \* \*

"Q. \* \* \* Did he talk to anyone?

"A. No.

\* \* \* \* \* \*

"Q. Could you just generally tell me, then, what—how he appeared to you?

"A. Yes. He seemed nervous. He walked, and fidgeted quite a bit, and refused to eat anything.

"Q. All right. During the time that you were around him that day, did he eat anything?

"A. No, sir."

■ We agree that this testimony was not too remote and the state's objection should not have been sustained.

In view of the record, the sustaining of the state's objection was not such error as to warrant reversal. The witness testified before the jury as to the physical appearance and conduct of her brother on August 6th to August 10th (the date of the homicide). She was not asked to and did not express an opinion as to his sanity or insanity at any time.

Ground of error No. 29 complains of the sustaining of the state's motion in limine which precluded appellant from introducing in evidence the prior jury finding of insanity and the court's judgment thereon.

■ Ordinarily the judgment on the verdict of a jury at a preliminary trial on the issue of insanity is admissible in evidence at the main trial where the issue of insanity is raised. McMurrey v. State, 145 Tex.Cr.R. 439, 168 S.W.2d 858; Parsons v. State, 160 Tex.Cr.R. 387, 271 S.W. 2d 643.

Appellant argues that had he been able to introduce the judgment of insanity, this would have shifted the burden to the state to prove that appellant was sane at the time of the trial.

The effect of such judgment finding appellant insane was to prevent his being tried for the offense of murder unless and until upon a subsequent trial on the issue, in the same court, another jury found him sane (competent to stand trial).

■ While the judgment is not found in the record and neither judgment nor proof of same was allowed to go to the jury, it is shown that subsequent to his being adjudged insane and committed to

Rusk State Hospital, another jury empaneled pursuant to Art. 46.02, Sec. 7, V.A.C.C.P. found appellant sane. His status at the time of his trial for murder was thus restored to that of a person presumptively sane.

Neither of the judgments at the preliminary trials on the issue of sanity or proof thereof being before the jury, the granting of the state's motion is harmless error and not ground for reversal.

The remaining ground of error (No. 30) complains that the court committed material error in not allowing appellant to show the jury that Doctors Constant, Hunter and Thompson examined appellant for the state, thereby showing the jury that the psychiatrists and psychologists were in fact "the District Attorney's" witnesses instead of appellant's witnesses.

Dr. James A. Hunter and Dr. F. Fagan Thompson, members of the staff of Rusk State Hospital, and Dr. George Constant, practicing physician specializing in psychiatry in Victoria, were called as witnesses by the state. Whether they were appointed by the court to examine appellant, or made the examination "for the state," the examination was made after the offense was committed; the five psychiatrists and psychologists who made such examination expressed the opinion that appellant was at the time insane, and four of the five felt that he was insane at the time of the offense.

At no time did appellant attempt to show that either of these witnesses was in any way biased in favor of the state.

The state called three general practitioners of medicine who testified that appellant was sane at all times.

The ground of error is overruled.

No reversible error appearing, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

In our original opinion we set forth the testimony of appellant's sister concerning appellant's actions while in Port Neches, some three months prior to the homicide. We have again examined the record and find that prior to the State's objection the witness had testified, before the jury, regarding such occasion as follows:

Q. All right. How did he appear to you this first day that you spent in Port Neches, when you were with him all day?

A. He wasn't himself. He was extremely upset, and he walked up and down the floor and cried. He cried the biggest part of the day * * *

Remaining convinced that the error was harmless, appellant's motion for rehearing is overruled.