Steven Charles WOMBLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 58814.

Court of Criminal Appeals of Texas, Panel No. 1.

July 1, 1981.

Tom Mills, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., John Tatum, Les Eubanks and Jayne Wilson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and ODOM and W.C. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a murder conviction, wherein the punishment was assessed by the jury at life imprisonment.

On appeal appellant complains of improper questioning of a witness, that the court erred in admitting his oral statement denying participation in the alleged crime, that the court erred in refusing to admit his signed statement given to police, and that the court erred in refusing to give a special requested charge on "shooting to scare," a defensive theory.

The sufficiency of the evidence is not challenged. A brief recitation of the facts is necessary, however, to put the grounds of error in proper perspective.

On June 18, 1977, in the early morning hours, Larry Whipple, the deceased, and his step-brother were driving east on Mockingbird Lane in Dallas in a blue station wagon. At the same time appellant and two companions were driving in an Opel automobile in the same direction. Appellant was riding in the front passenger's seat of the Opel. The evidence shows the parties in both cars had been drinking for several hours but had not been together.

The two automobiles began weaving in and out of the two lanes of traffic, and while so jockeying for position came in contact with each other. Insults were exchanged between the deceased and the appellant. Following this exchange and while the Opel was behind and to the left of the station wagon, appellant fired a .38 caliber handgun at the station wagon, hitting the back windshield. Appellant yelled, "I'm going to shoot your mother fucking head off" as he moved the upper part of his body out of the window of the Opel.

The Opel passed the station wagon on its left as appellant shot his pistol in rapid fire action. A bullet struck the deceased, the driver of the station wagon, in the back of the head, causing his death. The Opel's lights went off and it left the scene. The appellant was later apprehended.

Appellant admitted the shooting, but claimed he shot only at the station wagon's tires. He testified he thought the deceased was a member of a motorcycle gang that had vowed to kill him.

Initially we shall consider appellant's ground of error the "trial court erred in refusing to grant a mistrial when the prosecutor asked an investigator testifying if he had not expressed the opinion that the defendant 'should serve some time'."

At the outset it appears that the ground of error is erroneously framed. Appellant actually directs our attention in his argument under this contention to the testimony of Janette Tooraen, a State's witness, and not to that of any investigator. We do not find that the investigator in question ever testified.

Janette Tooraen testified she was a witness to the shooting and described what she observed. On cross-examination she admitted she had been interviewed by a defense investigator named Clark. She denied that she told him certain things. On re-direct examination it was elicited from her that Clark had flashed a badge and left her with the impression he was investigating the alleged crime for the city of Dallas or for the district attorney. The record then reflects:

"Q (By prosecutor): All right. Do you also recall him saying the man ought to get time for this?

"A Yes, he did.

"MR. MILLS (Defense Counsel): I object to that on the grounds it's of a hearsay nature.

"THE COURT: Sustained.

"Mr. Mills: I asked the jury to be instructed to disregard it.

"THE COURT: Members of the jury, disregard the last question and answer, please. Do not consider it for any purpose.

"MR. MILLS: I respectfully move for a mistrial.

"THE COURT: Overruled."

The appellant contends the question was of such high impropriety the court's jury instruction could not cure the error.

■ It is observed that the appellant first established on cross-examination that the witness was interviewed by the defense investigator and several questions were asked as to that conversation. It was obviously an attempt to lay the predicate for possible impeachment. On re-direct examination the State went into the question of the same conversation or interview. See Article 38.24, V.A.C.C.P. When the complained of question was asked and answered, the court sustained the objection and instructed the jury to disregard the question and answer. The error, if any, was cured by the court's instruction to the jury. *Jackson v. State*, 552 S.W.2d 798 (Tex.Cr. App. 1976). The court did not err in overruling the mistrial motion.

Appellant also urged the court erred in admitting his oral statement denying participation in the shooting made under arrest and which was inconsistent with a later written statement and his trial testimony.

Appellant contends he was taken to the police station and shortly after arrival was interrogated about the shooting without being given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 38.22, V.A.C.C.P. The State contends the appellant

went willingly to the police station, that the case was in the investigatory stage, that they had not begun to focus upon the appellant as the suspect and he was free to leave and had been so told at the time he denied participation in the shooting.

■ Be that as it may, it is observed that after a police officer testified as to the oral statement, the appellant testified on direct examination to his denial of participation in the crime. When a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal. Cf. *Preston v. State*, 481 S.W.2d 408 (Tex.Cr.App. 1972); *Hare v. State*, 460 S.W.2d 124 (Tex.Cr.App. 1970).

Appellant contends the trial court erred in refusing to admit his signed statement given to the police.

The appellant testified on direct examination as to the events surrounding the alleged offense. He admitted the shooting, but claimed self-defense. At the conclusion of his testimony on direct examination, he was asked if he had signed a statement in the presence of Sgt. W. M. Parker and a Karla Crenshaw. Before the question could be finished, the prosecutor interrupted with an objection that it was self-serving. The court stated, "Let me see it and you gentlemen, please. The objection is sustained at this time." The statement was then marked for identification, and the court ordered it *admitted for the purpose of the record only.*

Appellant argues that since officer Carlan was allowed to testify as to the oral denial of participation in the alleged crime, that his (appellant's) trial testimony of self-defense, etc., would seem to be a story of recent fabrication, and he was entitled to show by the statement that only a few hours after the oral denial he gave the police a written statement consistent with his trial testimony.

The State contends the statement was self-serving, only tending to bolster appellant's trial testimony, and that it was inad-missible. The State urges that if the exclusion of the statement was error it was harmless error as, on cross-examination, it was established that on the morning of June 18, 1977, after his earlier denial appellant told the police where the gun was, and also told them of his self-defense claim.

■ We agree the statement was not admissible as it was self-serving, but if we be wrong, the error was harmless. This court has consistently held reversal is not required by exclusion of evidence where the same testimony was later admitted without objection. See *Wagoner v. State*, 402 S.W.2d 738 (Tex.Cr.App. 1966); *Hays v. State* 480 S.W.2d 635 (Tex.Cr.App. 1972); *Preston v. State*, 481 S.W.2d 408, 409 (Tex. Cr.App. 1972). See also *Hare v. State*, 460 S.W.2d 124 (Tex.Cr.App. 1970).

Lastly appellant contends the trial court erred in failing to give his specially requested charge on "shooting to scare," the defense raised by his testimony.

Appellant testified, inter alia,

"Before we got to the light they kept hollering, you know, and all this and they said something. They called me an MF and kept threatening. So I fired two shots immediately . . . I pointed it down toward the . . . stuck my hand out of the window and pointed down toward the tires and pulled the trigger twice in a rapid fire.

"Q (Defense Counsel) At that point were you shooting to scare them?

"A Yes, sir.

"Q Why?

"A I was shooting at them to let them know I was armed, you know, so they would leave us alone. We was trying to get out of there, you know, without a hassle."

Then after more threats appellant fired his pistol four more times. Appellant testified he did not know that he had killed the deceased by a shot to the head until later in the morning. He denied taking specific aim and having specific intent to shoot the deceased.

The appellant timely presented the following special requested charge which was denied by the trial judge:

"You are further instructed that if you should find from the evidence beyond a reasonable doubt that the Defendant, Stephen Charles Womble, shot and killed Larry Whipple, but further find from the evidence or the evidence creates in your mind a reasonable doubt, that the Defendant, Stephen Charles Womble, shot toward the car being driven by Larry Whipple and that he did not specifically intend to hit Larry Whipple but shot only to scare Larry Whipple away from him, the Defendant, then you are instructed that the Defendant, Stephen Charles Womble, would not be guilty of murder, and in such an event, if you find the facts so to be, or if you have a reasonable doubt thereof you will acquit the Defendant and say by your verdict 'Not Guilty'."

The essence of the special requested charge was that the jurors should acquit if they found that the appellant did not have the intent to kill.

The former Penal Code defined murder as the voluntary killing of an individual under the circumstances that did not excuse or justify the killing or reduce it to negligent homicide. Article 1256, V.A.P.C. A voluntary killing was an intentional killing. *Baylor v. State*, 151 Tex.Cr.R. 365, 208 S.W.2d 558 (1948); *Miller v. State*, 112 Tex. Cr.R. 125, 13 S.W.2d 865 (1929).

Changes in the offense of murder have been wrought by the 1974 Penal Code.

V.T.C.A., Penal Code, § 6.02, sets forth the general requirement of culpability. V.T.C.A., Penal Code, § 6.02(d), provides:

"(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

"(1) intentional;

"(2) knowing;

"(3) reckless;

"(4) criminal negligence."

V.T.C.A., Penal Code, § 6.02(b), provides:

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."

V.T.C.A., Penal Code, § 6.03, reads as follows:

"(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

"(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

"(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

"(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

V.T.C.A., Penal Code, § 19.01, defines all types of criminal homicide. It states:

"(a) A person commits criminal homicide if he intentionally, knowingly, reck-

lessly, or with criminal negligence causes the death of an individual.

"(b) Criminal homicide is murder, capital murder, voluntary manslaughter, involuntary manslaughter, or criminally negligent homicide."

This provision plainly mandates that one of the four mental states is required to justify conviction for any offense of criminal homicide.

In *Dockery v. State*, 542 S.W.2d 644, 650 (Tex.Cr.App. 1975) (on Motion for Rehearing), it was written:

"However, it is also clear that such a homicide must be accompanied by one of the four culpable mental states . . . We conclude, therefore, that homicide is punishable only where the State proves both voluntary conduct and a culpable mental state."

■ The distinction to be drawn in determining if the homicide is criminal is not whether the act is intentional or unintentional, but whether the act is voluntary or involuntary. *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App. 1979). A person may act unintentionally and still commit a criminal offense, provided he acts with knowledge, recklessness or negligence. In order for the homicide to be punishable, the evidence must show that the appellant committed a voluntary act with the requisite culpable mental state. *Dockery v. State*, supra; *Simpkins v. State*, supra.

V.T.C.A., Penal Code, § 19.02, provides in part:

"(a) A person commits an offense if he:
"(1) intentionally or knowingly causes the death of an individual;
"(2) * * *."

The appellant was charged with murder under the above quoted statute. Omitting the formal parts, the indictment alleged that on or about June 18, 1977 the appellant "did unlawfully then and there intentionally and knowingly cause the death of Larry Stewart Whipple, an individual, by shooting the said Larry Whipple with a pistol."

The court in its charge defined "intentionally" and "knowingly" as those terms are defined in V.T.C.A., Penal Code, § 6.03, quoted above. The court then charged on murder requiring that jurors find beyond a reasonable doubt that the appellant "intentionally or knowingly" caused the death of Larry Whipple as alleged in the indictment before they could find him guilty of murder.

The court also charged on voluntary manslaughter, involuntary manslaughter, self-defense, including the justification for resorting to deadly force, etc.

■ It would appear that the charge adequately protected appellant's rights. It is observed that the charge authorized the murder conviction if the appellant "intentionally or knowingly" committed the alleged offense. Thus the appellant was not entitled to an acquittal simply because he did not have the intent to kill as his special requested charge would have authorized.

In *Pless v. State*, 576 S.W.2d 83 (Tex.Cr. App. 1978), this court wrote:

"Next appellant contends the court erred by failing to instruct the jury on the issue of intent to kill. Appellant did not object to the charge on this ground. *Moreover*, the jurors were charged that they must find that appellant intentionally or knowingly caused the death of his wife. This was sufficient. Appellant's second contention is overruled." (Emphasis supplied.)

■ Further, it has been long held that the intent of a defendant may be ascertained or inferred from the means used and the wounds inflicted. 4 Branch's Ann. P.C., 2nd ed., § 2190, p. 536, and cases there cited. Intent to commit murder may be shown by the use of a deadly weapon per se. *Gamblin v. State*, 476 S.W.2d 18 (Tex.Cr. App. 1972); *Rodriguez v. State*, 486 S.W.2d 355 (Tex.Cr.App. 1972); *Lewis v. State*, 486 S.W.2d 104 (Tex.Cr.App. 1972); *Cherry v. State*, 488 S.W.2d 744 (Tex.Cr.App. 1972), cert. den. 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199. In fact, where a deadly weapon is fired at close range and death results the law presumes an intent to kill. *Stills v. State*, 492 S.W.2d 478 (Tex.Cr.App. 1973);

*Valore v. State*, 545 S.W.2d 477 (Tex.Cr. App. 1977).

■ If it be appellant's argument that the court should have considered his requested charge as requesting a charge on aggravated assault, this court in *Simpkins v. State*, supra, at p. 134, wrote:

"In *Cain v. State*, 549 S.W.2d 707, 713 (Tex.Cr.App. 1977) cert. den. 434 U.S. 845, 98 S.Ct. 149, 54 L.Ed.2d 111, we held that when a deadly weapon per se is used in a deadly manner and death results, there is no need to give a charge on aggravated assault even though the defendant testified he did not intend to kill the victim. See *Ruiz v. State*, 523 S.W.2d 691 (Tex. Cr.App. 1975); *Stills v. State*, 492 S.W.2d 478 (Tex.Cr.App. 1973)."

The evidence shows the appellant used a .38 caliber pistol, which is within the term "deadly weapon" as defined by V.T.C.A., Penal Code, § 1.07(a)(11).

The judgment is affirmed.