William Alexander WITHERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 336–82.

Court of Criminal Appeals of Texas, En Banc.

Oct. 27, 1982.

John A. Schwartz, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., Allan Massis, David Clay Cowan and R. Bradford Stiles, Asst. Dist. Attys., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S AND APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ODOM, Judge.

In its decision the Court of Appeals reversed and remanded the judgment of the trial court, under the jury's finding of guilt and a 6 year probated sentence for involuntary manslaughter of his wife. *Withers v. State*, 631 S.W.2d 595 (Tex.App.1982). We granted petitions for discretionary review to both the State and the appellant. We will address the State's contention first.

The Court of Appeals found reversible error in the admission of parts of appellant's confession, over proper objection that related extraneous prejudicial matters. The State urges that the trial court's failure to exclude those portions of the confession was harmless error since the appellant testified to the same facts as those objected to in the confession, and the same evidence was also introduced from another source without objection.

Generally when a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, he may not complain on appeal. *Womble v. State*, 618 S.W.2d 59, 62 (Tex.Cr.App.1981).

In the present case the appellant sought to exclude the first parts of a written statement given to the El Paso police of prior divorces and marital affairs. This was overruled by the trial court. The first part of the written statement given to the police states:

"Since the time that my wife and I were married, we have had some marital difficulty. Twice since we were married my wife had engaged in some type of extra-marital affair. The first was while we were stationed in Hawaii and this was more of a Flirtation with an E–6 by the name of Watts. This was a short term association and with the help of a base chaplain and medical help, the affair was terminated. The second was with a man in Hawaii by the name of JOE ROONEY. I was in a job while stationed in Hawaii where I was required to travel extensively and I believe that my wife became lonely while I was away and this led to the affair with ROONEY. I was gone for about five months and when I returned I had a gut feeling that something was wrong. I found out about the affair when I returned and my wife was in the hospital for surgery on an ulcer. I had been married twice before meeting SHANNON and I felt that I was just a loser and I told her that if she wanted a divorce she could have it. She stated at the time that she did want a divorce, and I made plans to return to the continental U.S. SHANNON told me that she wanted to stay in Hawaii a couple of extra days and arrangements were made for this, but when I was preparing to leave, she came to the airport and told me that she would come with me. I would like to add that while we were in Hawaii both of us sought Psychiatric help in reference to our marital problem, and learned from it. I was advised that I was not giving my wife room to grow, and she learned that she was living in somewhat of a fantasy world. When we returned to the U.S., we got an apartment at the Cielo Vista apartments and things went fairly well. At one point ROONEY did show up at the apartment and asked to see SHANNON and both SHANNON and I talked to ROONEY. I told both of them that if she wanted a divorce she could have it, and I also brought out that SHANNON had been leading ROONEY on by long distance that something could still happen. At the end of the conversation, SHANNON stayed with me. Since the time that we returned to the states, we

have had the same problems that all married couples do, but life has been generally very good to us. I am certain that there have been no further affairs since our return."

The record also indicates that the State on cross-examination of appellant only once *directly* inquired about the first part of the written statement when they asked:

"Q. You say in your statement that your wife had at least two affairs while you were stationed in Hawaii, is that correct?

"A. That is correct.

"Q. And how many affairs did she have while stationed at Fort Bliss?

"A. She didn't have any."

The appellant did not object nor did he inquire into any part of the written statement given to the El Paso police.

Rafael Harvey, a witness called by appellant, in response to a cross-examination question by the State as to whether the appellant was married or not stated: "No. I believe he was in the process of getting a divorce, sir." Appellant did not object. Taken in context this statement is not in clear reference to or the same as the two prior divorces in appellant's statement to the police.

Amalia Boohers, a witness called by the State, testified in reference to marital discord between appellant and his wife:

"Q. And when he (appellant) would go what would he do? I am not asking what would be said, what would he do when he would go?

"A. Well one time he did stop by my office and ask for her. During the lunch hour most of the time he would go directly in her office and just sit there. I don't think I ever heard them converse even, but he did ask me during one lunch hour when she wasn't in her office; and he came in and asked if I knew where she was and I told him that I didn't.

"Q. On that occasion what was his demeanor?

"A. He seemed agitated that he didn't find her at her office, her desk.

\* \* \* \* \* \*

"Q. ... Did Mrs. Withers return after lunch?

"A. Yes she did. I told her that her husband had been looking for him [her?] and he seemed upset because he didn't find her there and she said 'Yes, I know.'

"Q. ... What did she do, what happened to her after she returned from lunch?

"A. She looked for her husband in the building and she couldn't find him and she got on the phone and made a phone call. I did not hear what was said, and then she started crying and put her head down on her desk and was crying, and I asked her if there was anything I could do and she shook her head."

Although prejudicial as bordering on marital problems, this testimony was not the same as that in the written statement given to the police.

In *Womble* the defendant did not object to testimony from another witness as to the previously objected to oral statement, and defendant himself testified to the same facts. We do not construe appellant's, Rafael Harvey's and Amalia Booher's responses as an offer of testimony the same as that erroneously admitted in the statement. Appellant's own testimony comes closest to matching the situation in *Womble,* yet, as can be seen by comparing his testimony and the statement above, appellant's brief answer lacks most of the prejudicial matters contained in the statement. The record fails to support the State's contention that appellant testified to the *same* facts as those in the written statement given to police. There is no evidence introduced by the appellant that he had been twice divorced or that his wife had extra-marital affairs. *Womble* requires the "same evidence" to be introduced for a defendant to be unable to complain on appeal. The same evidence, in explicit form, was not introduced by the defendant or from another source in whole or part. *Womble* does not apply. The State's contention is without merit.

Accordingly, the contentions raised by appellant need not be considered since the decision of the Court of Appeals is affirmed.[1]

---

1. The Court of Appeals discussed the defense of accident in this case. We note that the defense of accident does not exist under the 1974 Penal Code. *Williams v. State,* 630 S.W.2d 640, 644 (Tex.Cr.App.1982).