**Daniel Edward McBRIDE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–84–035 CR.**

Court of Appeals of Texas, Beaumont.

March 5, 1986.

Mark Morefield, Liberty, for appellant.
Michael R. Little, Liberty, for appellee.

## OPINION

DIES, Chief Justice.

In our original opinion, *McBride v. State*, delivered December 20, 1984, 698 S.W.2d 684, this Court reversed and remanded appellant's conviction of the offense of burglary of a habitation. The Court of Criminal Appeals, in an unpublished opinion, reversed the judgment and remanded to this Court for "consideration of the merits of appellant's motion to set aside the indictment based upon an alleged violation of the Speedy Trial Act," and for "reconsideration of appellant's second ground of error." *McBride v. State*, 286–85 (Tex.Crim.App., 1985).

Appellant was convicted by a jury for the offense of burglary of a habitation. He pleaded true to two prior felony convictions

and the jury assessed his punishment at confinement for seventy-five years.

Appellant's first ground of error contends the "trial court erred in overruling appellant's motion to set aside case under the Speedy Trial Act."

The thrust of appellant's argument is that he was placed under arrest at approximately 8:30 p.m. on January 14, 1983, and detained in the Liberty County jail until 11:00 or 11:30 p.m. that same night. It was during this time that appellant was interviewed, fingerprinted, subjected to a lineup and was then released. Appellant was indicted on May 11, 1983, for the offense with which he was convicted. Appellant states in his brief that the State announced ready for trial for the first time on August 3, 1983. And since no announcement of ready was made by the State during the time prescribed by the Speedy Trial Act, the burden was upon the State to declare its readiness for trial at the time his motion for dismissal was filed and "at all times required by the Act." He argues that the State did not discharge its duty and, therefore, he was entitled to a dismissal of the indictment. It is his contention that the 120 day period prescribed by the statute began on the day of his arrest.

The Speedy Trial Act, *TEX.CODE CRIM. PROC.ANN. art. 32A.02* (Vernon Supp. 1986), provides in pertinent part:

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

. . . .

Sec. 2. (a) ... [A] criminal action commences for purposes of this article when an indictment, information, or complaint against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transac-

tion, in which event the criminal action commences when he is arrested.

■ The record reveals that appellant was arrested at approximately 8:30 p.m. on the night of January 14, 1983, and was released the same night at 11:00 or 11:30 p.m. He was not required to post bail or personal bond. No charges were filed against him. He was unconditionally released "to go about his business." Since he was not "detained in custody or released on bail ... to answer" for the offense, then under the quoted provisions of the Speedy Trial Act, the criminal action did not commence until the indictment was returned and filed.

■ The indictment was filed May 11, 1983. The record reveals that the State filed a written announcement of ready on May 17, 1983. An announcement of ready by the State, made within the prescribed period of 120 days, creates a prima facie case that the State is ready for trial and the burden then shifts to the accused to establish, if he can, that the State was in fact not ready for trial. *Teamer v. State,* 685 S.W.2d 315 (Tex.Crim.App.1984); *Smith v. State,* 659 S.W.2d 828 (Tex.Crim. App.1983).

In an attempt to rebut the State's readiness for trial at the time of its announcement of ready made on May 17, 1983, appellant argues that at that time he was not under arrest and not otherwise detained for the offense for which he was indicted and was actually incarcerated in the Texas Department of Public Corrections "from at least June 15, 1983 until July 7, 1983," and because of his absence and no attempt being made by the State to secure his presence for trial, the State could not have been ready for trial.

The record reveals that following the indictment the State did not know of the whereabouts of appellant until June 15, 1983, at which time it was discovered he was an inmate of the Texas Department of Corrections. The record further shows that appellant was transferred to the Liberty County Jail on July 7, 1983, and was arrested and incarcerated therein for the

indicted offense. On that date counsel was appointed to represent appellant.

This case against appellant was placed upon the trial docket of the District Court on August 3, 1983, and on that date the State announced ready for trial. The State also announced ready for trial on the dates of September 7, 1983, October 5, 1983, November 10, 1983 and on December 7, 1983.

■ The indictment against appellant was filed May 11, 1983, and the 120 day period prescribed by the Speedy Trial Act began on that date. Assuming appellant successfully rebutted the State's announcement of ready on May 17, 1983, nevertheless, the State did announce ready on August 3, 1983, at a time when appellant was present even though incarcerated in the Liberty County Jail, and such announcement of ready on such date was well within the prescribed time period following the date of the filing of the indictment. Appellant made no attempt to rebut the State's readiness on such date. This ground of error is overruled.

Appellant's second ground of error complains of error in "overruling appellant's motion to suppress and in admitting evidence illegally seized."

Appellant does not challenge the sufficiency of the evidence and for such reason we deem it unnecessary to detail the evidence concerning his guilt.

The thrust of his contention is that the warrantless arrest of appellant was unlawful and his fingerprints and photograph taken during his detention were improperly admitted into evidence.

We shall consider the evidence material to the warrantless arrest. On January 14, 1983, the McCreight family who lived in the Moss Hill vicinity of Liberty County were away from home. Earl McCreight, Jr., returned home accompanied by his cousin Kevin Collins at about 11:30 a.m. They saw a black man standing on the front porch with his hand on the door knob. He "had a blue-jean jack on, had blue-jean pants.... Had some shades on and a cap ... a dark brown ... kind of goldish look-ing cap.... His hair... wasn't flat down, it was kind of bushy out, and he had a goatee...." The man, who was about six feet tall, jumped off the porch and got into a silver colored car. The man asked McCreight where his father was and said he wanted to buy an old car which was sitting in the front yard. McCreight told the man that his father was coming around the corner. The man backed his car and left as McCreight's father approached. At about this time Collins saw a television set and two guns on the porch which had been left in the house by the family. They decided the man had burglarized the house. McCreight and his father, in separate vehicles, chased the man as he escaped in his silver colored car.

The McCreights' next saw the silver colored car where it had crashed and "run up on a guy wire" near a fire hydrant. McCreight identified this car as being the same car that the man had driven from the house.

At approximately the same time of McCreight's experience, Roy Dubose was driving near Moss Hill and saw a silver car "going pretty fast and it took a right hand turn and ended up going on the fire hydrant, through the stop sign, on the fire hydrant and up on a guy line for the telephone poles." He saw a man get out and start running down the hill. Dubose stopped to look at the car "and by the time [he] got down the hill the man was gone." The man he saw "was wearing a blue jean jacket ... a denim jacket, blue jean jacket, a hat, and I think he had on blue jeans.... When he came to my house later on that night he had the same clothes on and the same hat on...." Dubose identified the man that came to his house later in the evening as being the same man he saw fleeing from the wrecked car. He also made an in-court identification of appellant as being the same person who came to his house that evening. Dubose's mother called the police to report appellant's presence at their house.

Urban Valentine, a patrol officer with the Liberty County Sheriff's office, re-

sponded to a call at approximately 8:00 p.m., January 14, 1983, that "a suspect that the department had been looking for earlier had been seen in the area." A description of the person fleeing from the McCreights' house in the silver car had been given to the Sheriff's office. As Valentine was driving in the vicinity, in response to the call, he observed the appellant walking down the road. He was wearing "clothing similar to the description we had of the suspect they had been looking for earlier." Valentine stopped and talked to appellant. Appellant told Valentine his name was Danny Moore. He had no identification upon his person, and "I [Valentine] asked him where he was going or why he was out on the road this time of the evening walking out in this remote area and he said he'd been to a friend's house." Valentine asked appellant who he had visited and where and he wouldn't say. About this time Deputy Melvin Trahan drove up.

Valentine asked Trahan if he knew "the subject" and Trahan told him "Yes, I think I do. I think his name is Daniel McBride." Valentine made an in-court identification of appellant as being the same person that he found on the roadway and who was subsequently arrested that same evening. Appellant was transported to the Liberty County Jail at approximately 8:30 p.m. and released at approximately 11:30 p.m.

■ It is well established that probable cause to arrest, without a warrant, exists when the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *Hawkins v. State,* 660 S.W.2d 65 (Tex.Crim.App.1983). An officer has probable cause for an arrest after they recognized the defendant based upon a description given by the victim of the crime. *Jones v. State,* 565 S.W.2d 934 (Tex.Crim.App.1978); *Loving v. State,* 559 S.W.2d 363 (Tex.Crim.App.1977).

■ The evidence shows that the Liberty County Sheriff's office had a description of the suspect who had burglarized

McCreight's home. This description was made known to Officer Valentine. The arresting officers had been looking for the burglary suspect and there had been "considerable activity in the location earlier that day in an effort to locate the driver of the silver Cutlass that had wrecked out in that location." Appellant, when apprehended by the officers, was wearing clothing which matched the description of the clothing worn by the suspect who burglarized McCreight's house, and Appellant gave the officer a false name and refused to explain his presence on the roadway and refused to give him the name and location of "a friend" whom he had previously stated he had been visiting. We find this evidence is sufficient to establish probable cause for arresting appellant. The fingerprints and photograph taken while appellant was detained as a result of his arrest were admissible.

■ Assuming, arguendo, appellant's arrest without a warrant was unlawful, the admission into evidence of the fingerprints and the photograph of appellant while he was under arrest would not constitute reversible error.

The only fact sought to be proven by the fingerprints and the photograph was that appellant was the person driving the silver colored car prior to the wreck. An expert witness testified that fingerprints lifted from several articles in the car matched appellant's fingerprints taken from appellant while under arrest.

The witness McCreight identified the wrecked silver colored car as being the same car that the suspect had driven from the burglarized house. McCreight also gave a description of the burglar which matched the description of appellant at the time of his arrest. There was no objection to this testimony.

The witness Dubose identified the man driving the wrecked silver colored car as being the same man who came to his house later that evening. The description of the man was identical with the description of appellant when he was arrested. Dubose

further made an in-court identification of appellant as being the same person who came to his house that evening. No objection was made to this testimony.

Dubose's testimony clearly identifies appellant as being the driver of the car when it was wrecked. This fact was the only fact sought to be proven by the appellant's fingerprints and photograph about which appellant now complains. It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged. *Womble v. State*, 618 S.W.2d 59 (Tex.Crim.App.1981); *Crocker v. State*, 573 S.W.2d 190 (Tex.Crim.App. 1978); *Granviel v. State*, 552 S.W.2d 107 (Tex.Crim.App.1976). This ground is overruled.

The judgment is affirmed.

BURGESS, Justice, concurring and dissenting.

I concur in the result. I respectfully dissent to the majority's holding that the officers had probable cause to arrest and detain the appellant on January 14, 1983. I find no probable cause and thus the photographs and fingerprints taken as a result of the detention were not admissible. However, as stated by the majority, the improper admission of this evidence does not constitute reversible error in this case.