

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00021-CR

JATEVON JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. F23-1764-362

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Denton County[1] jury convicted Jatevon Marquise Johnson of capital murder and sentenced him to life imprisonment. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Supp.). Johnson drove to a Denton County pawn shop, walked in with two other people, and shot the owner. While fleeing, Johnson told a passenger in the getaway vehicle (an accomplice as a matter of law) that he only intended to steal guns from the pawn shop and brandish a pistol while doing so, but he "ain't mean to" shoot the owner. Johnson had gone to the pawnshop the day before to look at the guns.

In his sole point of error, Johnson argues that there is insufficient evidence supporting the conviction. Within his point of error, Johnson argues that the nonaccomplice evidence is insufficient to connect him to the offense. Because the nonaccomplice evidence tended to connect Johnson to the offense and the record reflects sufficient evidence, we affirm the trial court's judgment.

## I.      Background Facts

Johnson was convicted of being the gunman in the murder of Daniel White, the owner of a pawn shop in Lewisville, Texas.

On February 13, 2023, Johnson and Kevin Moss[2] drove to the pawn shop in Johnson's red Ford Escape to look at firearms. They left when the guns were not on display and White

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2]We use pseudonyms to protect the identity of any minors at the time of the incident. *See* TEX. R. APP. P. 9.10(a)(3).

advised them that they had to have identification before he could show them any. Johnson and Moss returned later that day, but Joe Gonzales, White's father-in-law, refused to show Johnson any weapons because Johnson still did not have any identification. That evening, Denyrion Skinner joined Johnson and Moss, and they spent the night at a Super 7 motel in Dallas with Jovana Cervera. Denyrion slept in the vehicle.

The next morning, they picked up Damonta Skinner, dropped off Cervera at work, and traveled back to the pawn shop. Johnson backed into a parking spot, but no one went inside. Johnson then drove next door to a 7-Eleven.[3] Photographs from the surveillance footage from the 7-Eleven show, and Moss testified, that Johnson was wearing a black hoodie, jeans, and a black medical facemask. From 7-Eleven, Johnson drove them back to the pawn shop and again backed into the last parking spot. Johnson went inside while Denyrion and Moss followed, Moss briefly stopping at the vehicle to tie his shoe. Shortly after all three entered the pawn shop, Moss stated that he heard two gunshots, started running toward the vehicle, and turned to see Johnson and Denyrion fleeing the pawn shop as well. The three men then ran to the Ford Escape, where Damonta got into the driver's seat. Once all three were back in the vehicle, they fled the scene quickly.

White called 9-1-1 and reported that a young black male, wearing a black hoodie and jeans, jumped on the counter and shot him. White said that three males, eighteen to twenty-years-old, then ran out the door. White was transported to a local hospital but died later that

---

[3]The back of the 7-Eleven faces the left side of the pawn shop.

morning. Officers at the scene recovered two spent 9mm casings and a magazine with 9mm ammunition. Officers also recovered a firearm next to White.

Terry Layman, a manager at a nearby car dealership, observed an older model, red Ford Escape earlier that day in the parking lot of the pawn shop and later saw three young black males run from the pawn shop to the red Ford Escape before it sped off. Surveillance footage from the dealership captured the red Ford Escape's movement before and after the crime, and surveillance footage from a motel down the road from the pawn shop shows a red Ford Escape going fast and cutting across the median to access the highway. License plate reader systems allowed police to track the red Ford Escape to an apartment complex. One officer stated the red Ford Escape smelled of bleach, and a black medical facemask was recovered from inside.

DNA analysis linked Johnson as a possible contributor to both the black medical facemask found in the red Ford Escape and the magazine found at the scene. Police interviewed Cervera, who identified Johnson, Moss, Denyrion, and Damonta as the vehicle's occupants on the relevant dates.

Moss was also interviewed by police, eventually admitting his involvement and testifying for the State. Moss testified that Johnson was the only one who had a gun, and Johnson admitted in the vehicle that he did not mean to shoot White. Moss testified that, while fleeing in the vehicle, Johnson told him that the plan was for Johnson to point a firearm at the clerk while Denyrion took the guns from the pawn shop. Moss identified Johnson from the car dealership's surveillance footage getting out of the vehicle, going into the pawn shop, and running back to the vehicle after Moss heard gunshots. Moss testified that while fleeing, Johnson was worried

4

because he had left a magazine for his gun back at the pawn shop. After fleeing the pawn shop, they went to Denyrion's house,[4] and then they went back to the Super 7 motel. Everyone already seemed worried, but then Moss received a message from a friend with a social media post about a murder at the pawn shop. Moss told Johnson that the victim had died. Johnson and Moss thought they had removed all of the contents from the car and disposed of them in a dumpster. Moss's same friend who messaged him earlier picked them up and took them to the friend's house, where they stayed for "a day or two."

Eventually, Johnson was arrested and was indicted for capital murder in the course of robbery for the shooting at the Lewisville Pawn Shop that resulted in White's death. The jury charge included two alternative paragraphs: (1) as the shooter and (2) as a party. Moss testified and was listed as an accomplice as a matter of law in the jury charge.

## II. Non-Accomplice Witness Testimony Tended to Connect Johnson to the Offense

In his sole point of error, Johnson's main complaint is that there is no evidence that he was the shooter. Since Moss testified and the jury charge included him as an accomplice as a matter of law, we must determine whether independent non-accomplice testimony tended to connect Johnson to the offense before Moss's accomplice testimony can be used to establish sufficiency of the evidence.

---

[4]Moss was not sure if they dropped Denyrion off at his house or somewhere else.

## A.    Applicable Law

The accomplice[5]-witness rule states that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14; *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016). "The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards." *Qualls v. State*, 547 S.W.3d 663, 671 (Tex. App.— Fort Worth 2018, pet. ref'd) (citing *Druery*, 225 S.W.3d at 498).

"When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we 'eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.'" *Id.* (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). "The sufficiency of nonaccomplice evidence is judged according to the facts and circumstances of each case." *Id.* (citing *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim.

---

[5]"An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). "To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged." *Id.* "A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it." *Id.* "In addition, the witness's mere presence at the scene of the crime does not render that witness an accomplice witness." *Id.* "And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness." *Id.* "In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law." *Id.*

App. 2011)). "We do not independently construe the nonaccomplice evidence but instead defer to the factfinder's resolution of it." *Id.* (citing *Smith*, 332 S.W.3d at 442).

"To meet the rule's requirements, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.* (citing *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). "Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense." *Id.* (citing *Ambrose*, 487 S.W.3d at 593). "Rather, the evidence, whether direct, circumstantial, or both, must show that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Id.* (citing *Smith*, 332 S.W.3d at 442). "Additionally, circumstances that are apparently insignificant may nevertheless constitute sufficient evidence of corroboration." *Id.* (citing *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999)). "[T]here is no requirement that the non-accomplice testimony corroborate the accused's connection to the specific element which raises the offense from murder to capital murder. There need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (per curiam) (footnote omitted) (citation omitted).

The jury charge here included principal liability as well as party liability as an alternative manner and means. "The appellant's liability as a principal or under a parties [sic] theory is of no relevance under an Article 38.14 analysis." *Id.* "The question is whether some evidence 'tends to connect' him to the crime; the connection need not establish the exact nature of his involvement (as a principal or party)." *Id.*

7

### B.    Analysis

Excluding Moss's testimony, the non-accomplice testimony established that Johnson was present at the scene, matched physical descriptions, fled with the group, and took other actions that indicated a consciousness of guilt.

Johnson drove to and entered the pawn shop wearing a black hoodie and blue jeans around the time of the 9-1-1 call and ran out the door after being inside a short time. Cervera established that Johnson, Moss, and Denyrion were together from the day before the murder until fleeing from the crime scene. White's description of the shooter, though vague, is not isolated. Surveillance footage, from the 7-Eleven and from the dealership, shows an occupant fitting Johnson's description in the red Ford Escape when it left the 7-Eleven and arrived at the pawn shop. The DNA on the black medical facemask linked Johnson to that vehicle. Additionally, the DNA on the magazine placed Johnson inside the pawn shop. The 9-1-1 call lined up with the timeframe of Layman's account and the timestamp on the dealership's surveillance footage. After the shooting, the license plate readers and surveillance footage allowed police to find the red Ford Escape and Cervera.

Evidence indicating consciousness of guilt included Johnson cleaning the car and surveillance video showing Johnson fleeing the scene. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (fleeing the scene allows a jury to infer guilt).

Viewing the non-accomplice evidence, we hold that a rational jury could have found that the evidence sufficiently tended to connect Johnson to the murder offense with which he was charged. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Qualls*, 547 S.W.3d at 672. We,

8

therefore, hold that Moss's testimony was sufficiently corroborated and properly considered by the jury.

## III.     The Record Contains Sufficient Evidence

Having concluded that the non-accomplice testimony sufficiently linked Johnson to the crime, we must now address the sufficiency of the evidence. We now include Moss's testimony in the overall analysis.

### A.     Shooter

Johnson argues that he "was merely present during the shooting." "Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence." *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018). Moss testified that Johnson stated that the plan was for Johnson to point a gun at the clerk and for Denyrion to rob the place. Moss also testified that Johnson said that he did not mean to shoot White. Moss testified that Johnson was worried because he had left a magazine at the pawn shop. Along with the non-accomplice evidence above, the record is sufficient to establish that Johnson was the shooter.

### B.     Robbery

Johnson further argues that the evidence is insufficient to establish the underlying offense of robbery because White did not state on the 9-1-1 call that the men were robbing him. The evidence was also sufficient to prove the intent to commit the underlying offense of robbery.

> If there is evidence . . . from which the jury could rationally conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the

9

> murder, then the State has proved that the murder occurred in the course of the robbery.

*Russo v. State*, 228 S.W.3d 779, 792–93 (Tex. App.—Austin 2007, pet. ref'd). "Intent may be inferred from the acts, words, and conduct of the accused." *Id.* at 793. "Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred." *Id.*

Johnson went to the pawn shop on the day before the murder, left because he could not see the firearm inventory, and came back a couple of hours later and saw the firearms. Johnson backed in and parked in the furthest spot away from the front door. Damonta was waiting for them to leave and got into the driver's seat, indicating the need for a quick getaway. Those actions can reasonably be interpreted as preparation for a robbery.

A reasonable inference is that Johnson jumped onto the counter to hold a gun on White while Denyrion robbed the place, but the jury could infer that White reached for his firearm in self-defense and Johnson shot White. *See Chastain v. State*, 667 S.W.2d 791, 795 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) ("While no one heard appellant or his accomplice actually demand money from the attendant," the attendant was shot, and "there was sufficient evidence to allow the jury to find that they were acting with intent to obtain control of the money under the attendant's care, custody, and control."). The jury could base this on the fact that White's firearm was found on the ground next to him. Even though no proceeds were taken, the act of

pulling the gun completed the attempt offense,[6] and Johnson's statement to Moss while fleeing established his intent to commit the underlying robbery. *See Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003) ("While no completed theft occurred, proof of a completed theft is not required to establish the underlying offense of robbery or attempted robbery.").

### C.    Intent to Kill

As noted above, the accomplice, Moss, testified that Johnson said that he did not mean to shoot White. An after-the-fact "I did not mean it" statement does not preclude a jury from finding that the defendant did mean it. "Evidence that the defendant arrived at the scene of the crime carrying a loaded weapon is probative of deliberate conduct." *Adanandus v. State*, 866 S.W.2d 210, 216 (Tex. Crim. App. 1993). Even if the jury believed that Johnson had hoped to rob the pawn shop without encountering resistance, the jury could believe that Johnson had the intent to kill once resistance developed. *See id.* at 215 ("When Hanan, an unarmed [bank] customer, attempted to thwart appellant's escape, appellant pulled his gun and shot Hanan after Hanan had fallen to the ground."). "[E]vidence of a struggle does not necessarily negate [a finding of] deliberate conduct." *Id.* at 216.

"[T]he specific intent to kill may be inferred from the use of a deadly weapon." *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *see Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.] 1981) ("[W]here a deadly weapon is fired at close range and death results[,] the law presumes an intent to kill.").

---

[6]"The elements of a criminal attempt are: (1) a person (2) with specific intent to commit an offense (3) does an act amounting to more than mere preparation (4) that tends but fails to effect the commission of the offense intended." *Yalch v. State*, 743 S.W.2d 231, 233 (Tex. Crim. App. 1988) (citing TEX. PENAL CODE ANN. § 15.01(a)).

11

After reviewing all evidence in the light most favorable to the verdict, and considering the necessary corroboration for accomplice testimony, we conclude the jury had legally sufficient evidence to find Johnson guilty of capital murder.

## IV. Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: July 28, 2025
Date Decided: March 16, 2026

Do Not Publish