Opinion filed June 13, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00197-CR

_____

## BILLY WAYNE HAYNES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-35,839**

## M E M O R A N D U M   O P I N I O N

The jury convicted Billy Wayne Haynes of murder and of engaging in organized criminal activity. The jury assessed his punishment at life imprisonment and a $10,000 fine on the murder charge and confinement for fifty years and a $10,000 fine on the organized criminal activity charge. The trial court sentenced him in accordance with the jury's verdict. We affirm.

*I. Trial Evidence*

Appellant was the president of Aryan Circle, a white supremacist street gang. On the night that the offenses made the subject of this appeal occurred, Appellant, along with eight others—many of whom were Aryan Circle members—went to Dwain Barina's house. They intended to retaliate for a fight that occurred earlier that night between some of their Aryan "brothers" and others who were not members of their gang. Appellant was accompanied by Aryan Circle members Summer Wilkins, George Scott, Hannah Fierros, Greta Caldwell, Kevin Jackson and David Callaway. Kenneth Griffin and Horace Chunn worked on Jackson's oil field crew and were with Appellant and the others, but were not Aryan Circle members.

Before the group went to Barina's house, Jackson called Tracy Roupp, the father of one of Fierros's children, and told Roupp that he would "suffer the consequences" if he did not agree to fight. Roupp and Fierros were estranged, but continued to live together and raise the children. Fierros and gang member Scott were dating at the time. When Roupp declined the fight, Fierros led Appellant and the other gang members to Barina's house in search of Roupp because she had been there several times. She rode in Wilkins's GMC Yukon with Appellant, Scott, and Caldwell. Jackson, Callaway, Griffin, and Chunn followed in a second car.

Meanwhile, Roupp, Barina, and Rey Valdez were waiting outside Barina's house with a shotgun and a handgun because they expected trouble after Jackson's phone call to Roupp. When Appellant and the others arrived, Barina's wife and daughter were also outside Barina's house; both groups yelled at each other. As Appellant's group exited their vehicles and approached a fence that enclosed Barina's yard, Valdez fired a warning shot into the air. Everyone scattered. Roupp then fired his shotgun at the ground.

2

Wilkins, Fierros, and Caldwell drove away; Callaway drove off in the other car. Appellant, Scott, Jackson, Chunn, and Griffin ran across the street and hid behind a trailer house. Appellant had a silver .380 pistol with him and was the only one in his group who had been seen with a gun. Appellant fired several shots from the .380 toward the silhouettes in front of Barina's home. Appellant and those who were still with him ran to their vehicles and fled to Wilkins's aunt's home, where Appellant and Wilkins had been living. Appellant told the group that he thought he "got one."

Roupp, Barina, and Valdez went inside the house and told everyone to get on the ground. Valdez said that he had been hit, so Barina's daughter called 9-1-1. But it was an hour before paramedics arrived as police worked to secure the safety of the scene, and he died. Witnesses told police that they had recognized Fierros as being one of the people at the scene. Police questioned her. The next morning, police arrested Scott.

Appellant "got word" that police officers were planning to search Wilkins's aunt's house, so he put his silver .380 pistol into a black trash bag and placed it in the dumpster behind the house. Caldwell and Nathan Truex, another Aryan Circle "brother," retrieved the black trash bag from the dumpster. Caldwell then showed Truex how to take the gun apart and clean it off. Later, Jennifer McWilliams and Truex took the gun to McWilliams's home and tried to burn it. Because they were unsuccessful in their attempt to burn the pistol, they threw it into a pond behind a local business.

Appellant, Wilkins, Fierros, Scott, Caldwell, Jackson, and Callaway were arrested for engaging in organized criminal activity. Griffin and Chunn were never formally charged, however, because they were not Aryan Circle members. The grand jury also declined to return an indictment against Callaway, Caldwell, and Fierros. The State dropped the charges against Wilkins and Jackson in return for

3

their testimony. The State also reduced the charges against Scott for his testimony. Each and every person who went to Barina's home that night with Appellant testified against him.

## II. Issues Presented

Appellant presents five issues on appeal. In his second and third issues, Appellant complains about the trial court's decision to allow witnesses to tell the jury about three out-of-court statements he made while in jail awaiting trial. Appellant's first, fourth and fifth issues turn on the sufficiency of the non-accomplice testimony to corroborate the accomplice witnesses.

## III. Analysis

### A. Issues Two and Three: Appellant's Three Out-of Court Statements

Appellant argues in his second issue that the trial court erred when it permitted Micah May to testify about two statements that Appellant made to May while they were in jail before the trial. Appellant complains in his third issue that the trial court allowed Marcela McKinney to tell the jury about a different statement Appellant made in jail. Appellant contends that all three statements violate Texas Rules of Evidence 404(b) and 403. We review a trial court's decision to admit evidence for an abuse of discretion. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will not disturb the trial court's decision to admit evidence if the evidence was admissible under any theory of law. *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. [Panel Op.] 1982). The trial court has great discretion in its evidentiary decisions, and we defer to the trial court because it "is in a superior position to evaluate the impact of the evidence." *Montgomery*, 810 S.W.2d at 379.

*1. Appellant's Statement to May that Appellant was the "Shooter"*

Appellant complains that the trial court erred when it permitted May to tell the jury that Appellant admitted that he killed someone because the statement is not relevant under Rule 404(b). May testified that Appellant had said that "George Scott gave him a call that he was having some problems with some Mexicans. They went over there and they got into an altercation. They went to leave and he shot the guy." May told the jury that Appellant also called the victim a "bitch ass Mexican" and said that the victim got what he deserved. When the prosecutor asked if Appellant said who shot this person, May said, "Yes. He said that he did." The State did not offer May's testimony as evidence of an extraneous offense separate and apart from the charged offense. Instead, the State offered this evidence as proof that Appellant fired the shots that killed Valdez. This statement is an admission by a party-opponent, and it supports the allegation that Appellant killed Valdez. *See* TEX. R. EVID. 801(e)(2); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). Because the statement was not evidence of an extraneous offense under Rule 404(b), we need not reach Appellant's separate contention that there was a lack of notice under Rule 404(b).

Appellant further contends that his statements were more prejudicial than probative and that the trial judge failed to conduct a Rule 403 balancing test on the record. Appellant asks us "to conduct this analysis." *See* TEX. R. EVID. 403; *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997); *Ramirez v. State*, 815 S.W.2d 636, 646 (Tex. Crim. App. 1991). During a hearing outside the jury's presence, Appellant objected to the admissibility of the statement under Rule 403. The trial court overruled his objection without further comment. Once a party lodges a Rule 403 objection, the trial judge lacks the discretion to decide whether to engage in the balancing test required by the rule. *Montgomery*, 810 S.W.2d at 389 (Tex. Crim. App. 1991). When it makes an admissibility ruling, "the trial

court implicitly makes findings of fact and conclusions of law." *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996). No authority requires the trial court to include findings or conclusions in the record, and Appellant did not ask the trial court to do so. *See id.* Absent an express refusal to conduct the balancing test, we presume that a trial court conducted the test when it overruled the Rule 403 objection. *See Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997) ("We find nothing in the record to indicate that the trial court did not perform a balancing test, albeit a cursory one.").

There is a presumption that relevant evidence is more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. However, there is a potential danger that the extraneous bad act may "impress the jury in some irrational but nevertheless indelible way." *Id.* at 390. When conducting the balancing test, the question is whether its probative value is *substantially* outweighed by such a danger. TEX. R. EVID. 403. Appellant bragged about the shooting while he was in jail prior to trial. Appellant's admission and his characterization of the victim as a "bitch ass Mexican" who "got what he deserved" shows his state of mind and clarifies the circumstances surrounding the shooting. This evidence directly contradicts Appellant's defensive theory that the accomplices only named him as the shooter to get a reduced sentence and was not likely to "impress the jury in some irrational but nevertheless indelible way." *See Montgomery*, 810 S.W.2d at 389–90. We conclude that the trial court did not abuse its discretion.

### 2. *Appellant's Statement Threatening May*

Appellant complains that the trial court erred when it permitted May to also testify that Appellant threatened to kill May. Appellant challenges the relevance of the statement under Rule 404(b), the prejudicial effect under Rule 403, and the lack of notice of the testimony until "immediately before the witness was called during the trial." A defendant may not be tried for a collateral crime or for being a

criminal generally, and Rule 404(b) prohibits the admission of evidence of an extraneous offense to prove a defendant's character or to show that the defendant acted in conformity with that character. TEX. R. EVID. 404(b); *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994). Evidence of an extraneous offense "is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him." *Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988). Evidence of extraneous offenses may be admissible, however, "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b).

Although Appellant argued that his alleged threat is not relevant, his statement to May is relevant if it is evidence of an extraneous offense offered for one of the alternative purposes. May told the jury that Appellant said, "You ho ass bitch, you better hope that I don't get -- I get off on this charge, because if they give me 99 years, it won't take nothing for me to get this door roll along, get mop buckets and radio your cell number. . . . and come in and kill your ass." A person commits the offense of making a terroristic threat if he "threatens to commit any offense involving violence to any person . . . with intent to . . . place any person in fear of imminent serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2011). May's testimony is some evidence that Appellant threatened to kill him. That constitutes a threat to commit an offense involving violence, and May's testimony is evidence that Appellant made the threat to instill fear in May and to prevent him from testifying. Appellant's threat is an extraneous offense and is relevant if it was offered for one of the permissible purposes.

The Court of Criminal Appeals has long held that "criminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under Rule 404(b) as showing 'consciousness of

7

guilt.'" *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996). In *Rodriguez v. State*, the defendant, who had been charged with murder, admitted that he was present during the killing but claimed that he did not participate in it and that he did not inform authorities because he had a criminal record. 577 S.W.2d 491, 492 (Tex. Crim. App. 1979). Before trial, the defendant approached the victim's brother and ordered him to drop the charges. *Id.* The Court of Criminal Appeals concluded that the threat was admissible and reasoned that "[t]hese are hardly the actions of an innocent accused. This evidence is every bit as probative of guilt, as would be flight by the accused." *Id.* at 493. In *Baimbridge v. State*, a defendant's threat to kill the arresting officer who had locked him in a cell was admissible. 350 S.W.2d 923 (Tex. Crim. App. 1961). The court reasoned:

> If we regard the statement of the appellant to Officer Mahoney as an effort on the part of Appellant to prevent the officer from testifying against him or an effort to prevent the officer from testifying the truth against appellant, the statement would be admissible in evidence as proof that one charged with crime threatened or attempted to intimidate a witness against him.

*Id.* at 923–24.

During Appellant's opening statement, his counsel told the jury that the only evidence the State had against Appellant was accomplice-witness testimony and that the accomplices, with hopes for reduced sentences, had motives to lie and to say that Appellant pulled the trigger. The State notified Appellant prior to trial that it intended to call May as a witness, and the day before trial, Appellant threatened to kill May if Appellant did not "get off on this charge." Appellant's actions were "hardly the actions of an innocent accused" and were probative of guilt. The trial court properly admitted evidence of the threat that Appellant had made to May; it was relevant and probative testimony under Rule 404(b).

8

Appellant complains that, even if May's testimony was admissible, "it didn't meet the prejudicial balancing test under Rule 403." Most evidence is prejudicial to an opponent. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). "Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Id.* The relevance of an extraneous offense that shows "consciousness of guilt" may be substantially outweighed by undue prejudice if the accused can affirmatively show that the evidence "is directly connected to some other transaction and further show that it is not connected with the offense on trial." *Havard v. State*, 800 S.W.2d 195, 203 (Tex. Crim. App. 1989) (quoting *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex. Crim. App. 1982)). Here, Appellant does not try to connect his threat to a different offense, and the record is devoid of any evidence that the threat is related to anything else. For all of the foregoing reasons, the trial court did not abuse its discretion when it admitted the evidence of Appellant's threat to May. Appellant's second issue is overruled.

### 3. Appellant's Statement to McKinney

Appellant contends in his third issue that a statement he made to a jailer, McKinney, was inadmissible under Rule 404(b). The State contends that the statement was an admission by Appellant that he had committed the charged crime. McKinney, a jailer from the Ector County Sheriff's Office, testified that Appellant was boasting about his pending release from jail on bond. When jailer McKinney said, "You will be back," Appellant informed her that he did not plan on coming back because he did not do drugs, did not drink, was not a thief, and "would just have to limit himself to one murder every two years."

Appellant argues that the State offered his statement as evidence that Appellant committed a murder in 2007, which was inadmissible as proof of the 2007 murder in the absence of evidence of the time, date, and place it occurred.

9

Although the State gave pretrial notice it intended to introduce evidence of a murder in Howard County on February 20, 2007, no proof of the 2007 murder was admitted. The trial court did not allow May to testify that Appellant told him that he had "beat one murder case and [would] beat this one too." The State argued that evidence of Appellant's statement was not offered to prove the extraneous murder; it was offered to prove that Appellant admitted guilt in this case— Appellant was being held for murder and said he would have to limit himself to one murder every two years. The prosecutor argued that Appellant's statement "directly references the charge he is being incarcerated for."

Unlike the excluded declaration to May that apparently referenced the 2007 murder, Appellant's statement to jailer McKinney concerned future conduct. When jailer McKinney said, "You will be back," Appellant responded that he did not plan to return to jail because he does not participate in illegal activities like drugs and theft. Except for Appellant's threat to have May killed for testifying against him, there is no evidence of any murder other than the charged offense. With no evidence in the record of a prior murder, no facts would permit the inference that Appellant's statement was an admission to two murders, one of which occurred in Howard County in February 2007. Therefore, Appellant's statement could be reasonably interpreted to refer to future conduct after his acquittal on the current murder charge.

The State offered Appellant's statement to jailer McKinney as proof that Appellant shot and killed Valdez as alleged in the indictment. Appellant's statement was admissible as an admission by a party-opponent. *See* TEX. R. EVID. 801(e)(2); *Trevino*, 991 S.W.2d at 853. Because we do not disturb the trial court's ruling if it was correct under any theory, we conclude that the trial court did not abuse its discretion when it admitted jailer McKinney's testimony. *See Sewell*, 629 S.W.2d at 45.

10

Appellant argues that his statement to jailer McKinney was more prejudicial than probative. It is "universally" recognized that trial courts have "considerable freedom" in evaluating the probative value of evidence offered in relation to its prejudicial effect. *See Montgomery*, 810 S.W.2d at 378. Just like the admissions to May, Appellant's statement to jailer McKinney clarifies the circumstances surrounding the shooting. This evidence directly contradicts Appellant's theory of the case that the accomplices were wrongly accusing him of firing the gun so that they would receive a favorable deal in their own cases. The testimony about the statements made to jailer McKinney was not likely to "impress the jury in some irrational but nevertheless indelible way." *See Montgomery*, 810 S.W.2d at 389–90. We conclude that the trial court did not abuse its discretion when it admitted the statements that Appellant made to jailer McKinney. We overrule Appellant's third issue.

### B. Issue One: Sufficiency of Non-Accomplice Testimony

In his first issue on appeal, Appellant argues that the evidence is insufficient to prove that he "caused the death of the victim in this case." He argues that, because the accomplice testimony lacks corroboration by non-accomplice evidence, the jury could not consider the accomplice testimony in determining guilt. Appellant asserts that the non-accomplice evidence alone is insufficient to prove that he committed murder and that he engaged in organized criminal activity.

Six accomplice witnesses testified that the group went to the Barina residence to avenge an affront to their Aryan Circle "brother," that Appellant was the only person with a gun, and that he fired the shots toward that residence. All of that evidence supports a conclusion that Appellant committed the charged offenses. All three of Appellant's sufficiency issues turn on whether that accomplice testimony is sufficiently corroborated.

11

## 1. Accomplice Witnesses

The trial court instructed the jury that Wilkins, Scott, Caldwell, Jackson, Fierros, and Callaway were accomplice witnesses as a matter of law. The trial court did not hold that Griffin and Chunn were accomplice witnesses as a matter of law but, instead, submitted the issue to the jury. The trial court correctly instructed the jury that it could not use accomplice testimony to convict Appellant unless it found that there was other evidence "tending to connect" Appellant with the offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Appellant argues that, in our review of the sufficiency of the non-accomplice testimony, we must eliminate the testimony of any "discredited witness," which includes any witness who received a benefit from the State in exchange for their testimony. We disagree.

A person is an accomplice if he participates in the commission of the offense with the requisite culpable mental state. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). "Participation" requires an affirmative act that promotes the commission of the charged offense before, during, or after it has been committed. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). A witness is culpable as a party to the offense in which the defendant was charged if he acted "with intent to promote or assist the commission of the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). The evidence must show that the witness "harbored the specific intent to promote or assist the commission of the offense." *Pesina v. State*, 949 S.W.2d 374, 382 (Tex. App.—San Antonio 1997, no pet.); *see* TEX. PENAL CODE ANN. § 6.03(a) (West 2011) ("A person acts intentionally . . . when it is his conscious objective or desire to engage in the conduct or cause the result.").

"Mere presence at a crime scene does not make an individual an accomplice, nor is an individual an accomplice merely because he has knowledge about a crime

12

and fails to disclose that knowledge." *Cocke*, 201 S.W.3d at 748; *see also Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). "A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it." *Druery*, 225 S.W.3d at 498. "In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness." *Id.*

If the facts are unclear about whether a particular witness is an accomplice, the trial court should define "accomplice" and instruct the jury to decide whether the "witness is an accomplice witness as a matter of fact." *Id.* at 498–99. If there is some evidence of an affirmative act by the witness to assist in the commission of the charged offense, a jury instruction must be in the court's charge. *Id.* at 499. When a witness has been charged "with the same offense as the defendant or a lesser-included offense or when the evidence clearly shows that the witness could have been so charged," the trial court has a "duty to instruct the jury that a witness is an accomplice witness as a matter of law." *Id.* at 498. If the witness is an accomplice witness as a matter of law or if the jury finds that the witness is an accomplice, then the jury must find other evidence that tends to connect the accused to the crime. CRIM. PROC. art. 38.14.

Appellant first argues that May is an accomplice because he "received a sentence reduction for testifying against the Appellant." We agree with the State's contention, however, that May is not an accomplice because he did not participate in "the commission of the crime." After Appellant admitted to the murder, May sent a letter to the district attorney offering to testify, and the State agreed to a two-year plea agreement instead of the previous three-year offer. Appellant is correct that May could have had a reason to be biased because of his reduction in sentence, but because he could not be charged with the same or a lesser included offense of

13

the charged offenses, May is not an accomplice witness. *See Druery*, 225 S.W.3d at 498. Therefore, the jury could have considered his testimony as non-accomplice corroborating evidence.

Appellant also contends that all the State's witnesses who were involved with the offense were accomplices. The State argues that Chunn was not an accomplice witness because he was merely present during the commission of the offense. Appellant neither asked the trial court to instruct the jury that Chunn was an accomplice as a matter of law nor objected to the submission of the issue to the jury. Moreover, Appellant does not argue on appeal that such an instruction should have been given. Instead, Appellant argues that, when we assess the sufficiency of the corroborating non-accomplice testimony, we should not consider the testimony of any witness that was "involved with the offense on the night in question" because each "received dismissals or a significant reduction in the sentences or their charges."

Chunn worked with Jackson and Callaway, but Chunn was not a member of the Aryan Circle. Chunn testified that his crew was heading home from the oil field when Jackson received a phone call. After Jackson received the call, they stopped at a convenience store. Chunn testified that they met a group of people at the store but that he did not know them. Chunn said that some of the group got into his car and some got into a Yukon and that they all went to a residence. But when they heard gunfire, everyone ran and hid behind a "trailer" across the street. According to Chunn, Appellant fired a gun in the direction of Barina's home before the group got back into the vehicles and left.

Later, investigators called Chunn's cell phone to ask some questions, but Chunn never gave a formal statement and was never charged. Chunn was in jail for other charges in another county and did not know he would testify against

14

Appellant until he heard that a bench warrant had been issued. The State made no promises to Chunn for his testimony.

Chunn's presence at the murder scene did not render him an accomplice. *See Druery*, 225 S.W.3d at 498. Because Chunn was not charged and because the evidence did not show that he could have been indicted for the same offense, he was not an accomplice as a matter of law. *Id.*; *Cocke*, 201 S.W.3d at 747–48. There was some evidence, however, that Chunn may have committed an act to promote the commission of the offenses. It was proper for the trial court to submit to the jury the issue of whether Chunn was an accomplice witness. And a reasonable jury could have found that Chunn neither participated in the commission of the offenses nor had the required intent. *See Solomon v. State*, 49 S.W.3d 356, 362 (Tex. Crim. App. 2001) (holding that, when a jury is instructed to determine whether a witness is an accomplice, the jury may believe that the witness was not an accomplice); *In re A.N.V.*, No. 11-05-00200-CV, 2007 WL 118926, at *4 (Tex. App.—Eastland Jan. 18, 2007, no pet.) (mem. op.) (jury is free to believe witness is not an accomplice). Therefore, the jury could have considered Chunn's testimony as non-accomplice corroborating evidence.

### 2. Accomplice-Witness Corroboration

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." CRIM. PROC. art. 38.14. To review the sufficiency of corroborating evidence, we eliminate the accomplice witness testimony and consider the remaining evidence in the record to determine whether any evidence tends to connect the defendant to the commission of the offense. *Solomon*, 49 S.W.3d at 361; *Keith v. State*, 384 S.W.3d 452, 457 (Tex. App.—Eastland 2012, pet. ref'd). Although the mere presence of the accused at the scene of the crime is by itself insufficient corroboration, presence combined with other suspicious circumstances

may sufficiently connect the defendant to the offense. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). A defendant's conduct prior to or after the offense may connect the defendant with the commission of the offense. *Smith v. State*, 332 S.W.3d 425, 445 (Tex. Crim. App. 2011). "Thus there must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

Appellant argues that, once the accomplice-witness testimony is eliminated, no physical evidence connects him to the offenses and no witnesses remain who identify "Appellant as the shooter." We disagree for two reasons. First, the requirement is not that the corroborating evidence independently prove that Appellant committed the offenses but that it tends to connect him to the offenses. *See Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) ("It is not necessary that the corroborating evidence . . . be sufficient by itself to establish guilt."). Second, Appellant ignores Chunn's testimony because he assumes it is accomplice testimony, but because a rational jury could have found that Chunn was not an accomplice, Chunn's testimony cannot be ignored.

Chunn testified that Appellant had a chrome-plated pistol and "put his hand back to push everybody behind him" as they hid behind the trailer. Chunn said that Appellant "leaned up against the trailer and took aim and fired" his gun in the direction of the residence. Chunn told the jury that his group ran and jumped in the two vehicles and left. According to Chunn, Appellant told the group later that night that he had shot someone.

The State's other non-accomplice evidence showed that Appellant admitted to May that he had shot and killed someone and also that he admitted to jailer McKinney that he would stay out of jail if he did not commit a murder for a while. Appellant also threatened to kill May. The investigators found four spent shell

16

casings near the trailer. A neighbor testified that he was familiar with gunfire and that he heard five shots from a handgun and one from a shotgun that night. That evidence is consistent with other testimony that a warning shot had been fired from the handgun, that four shots had been fired from across the street near the trailer, and that a shotgun had been fired at the ground. This evidence tends to connect Appellant to Valdez's murder and the associated organized criminal activity offense, and it sufficiently corroborates the testimony of the accomplice witnesses. Appellant's first issue is overruled.

### C. Issues Four and Five: Sufficiency of the Evidence

Appellant asserts in his fourth and fifth issues that the evidence is legally and factually insufficient to support both of his convictions. The Court of Criminal Appeals has concluded that "there is no meaningful distinction between" reviewing the evidence for factual and legal sufficiency and has instructed that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (referring to *Jackson v. Virginia*, 443 U.S. 307 (1979)). Under the *Jackson v. Virginia* standard, we must defer to the jury's credibility and weight determinations. *Id.* at 894. We consider all of the evidence in the light most favorable to the verdict to determine whether a jury could rationally find the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319.

A person commits the offense of murder if he knowingly or intentionally causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02 (West 2011). To prove that Appellant committed the offense of engaging in organized criminal activity, the State must have shown that he (1) intended to participate in a criminal

17

street gang and (2) committed murder. *See* TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2012). Appellant concedes he was a member of the Aryan Circle, a criminal street gang, but argues that the evidence did not prove he was "the shooter" and that, therefore, he is not guilty of murder or organized criminal activity. Appellant again incorrectly assumes Chunn was an accomplice.

The State sought to prove that Appellant, six Aryan Circle members, and two others, went to Barina's home to retaliate against Roupp, Valdez, and Barina for a fight earlier that night with Scott. The jury was instructed that "[a] person commits the offense of MURDER if a person intentionally or knowingly causes the death of an individual, or if a person intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." The jury was instructed that a person acts intentionally "when it is his conscious objective or desire to cause the result" and that a person acts knowingly "when he is aware that his conduct is reasonably certain to cause the result." *See* PENAL § 6.03(a), (b).

The State argued that Appellant was the only one with a gun who fired in the direction of the three men, killing Valdez. The jury heard testimony of eight other people who went with Appellant to Barina's home that night. Scott called Jackson and told him about the fight at Fierros's house. Both Scott and Jackson called Appellant, Wilkins, and Caldwell, and Callaway, Griffin, and Chunn were in the car with Jackson. The group of nine converged at the 7-Eleven across from Fierros's house and planned to retaliate. Jackson testified he called Roupp and explained that "something had to be done" for "jumping" Scott and Fierros. Jackson offered to meet and fight it out one-on-one, but when Roupp said "he wasn't trying to do that," Jackson told him that Roupp would "suffer the consequences." Fierros, Scott, Wilkins, and Caldwell testified that Fierros had been to Barina's home a few times and that she took them there. Fierros testified

18

that everyone was aware that they were going to Barina's home to retaliate for what happened to Fierros and Scott.

All of the accomplices testified that, when the group arrived and exited their vehicles, they heard gunfire and scattered. Wilkins, Fierros, Caldwell, and Callaway testified that they drove off after hearing gunshots and met up with the rest of the group later. Scott, Jackson, Chunn, and Griffin testified that they ran across the street and hid behind a trailer. Scott testified that he saw Appellant down on one knee and saw "muzzle flashes coming out of his hand." Jackson testified that he was kneeling about a foot away when he watched Appellant fire his weapon "[t]owards the crowd of silhouettes." Callaway testified that Appellant was shooting at Barina's trailer. Chunn also saw Appellant aim and fire at the Barina residence. Everyone testified that they ran to their vehicles and went to the home of Wilkins's aunt.

Appellant also admitted to others in his gang that he fired his weapon and killed someone that night. Wilkins testified that Appellant said he "thought he got him." Scott testified that Appellant told them that he saw "one fall." Fierros testified that Appellant said "he got one of them." According to Jackson, Appellant said, "I think I got one." Caldwell testified that she heard someone say "one fell." Later, Appellant told Jackson that the plan was to tell the police that Scott pulled the trigger. Jackson testified that he even received a letter from Appellant in which Appellant stated that someone would be charged and that, if he went to prison, everyone was "going to suffer over it."

Wilkins testified that Appellant brought his silver-plated .380 handgun on the night that the offenses were committed. Wilkins testified that she also saw Appellant take the gun with him when he got out of the vehicle at Barina's residence. Wilkins and Jackson both testified that Appellant was the only person who had a gun. Jackson saw Appellant with "a little .380" handgun. Wilkins also

19

told the jury that, when Appellant heard that the police might search their residence, she saw him put the .380 handgun into a black trash bag and place it in the dumpster and heard him ask Caldwell and Truex to "come pick it up." Caldwell testified that she and Truex went to the alley behind Appellant's house, picked up the gun, and took the gun to Truex's house. A few days later, Caldwell showed Truex how to take apart the gun and "clean it off." Jennifer McWilliams told the jury that she and Truex burned the gun at her house and dumped it in a pond. Finally, investigators recovered four spent casings near the corner of the trailer; they had been fired from a .380.

There is sufficient evidence to show that Appellant fired his gun in the direction of the three men. When a person fires a gun into a group of people without a specific or intended victim, the probability of serious bodily injury is so great that any resulting death constitutes murder. *See Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.] 1981); *Salisbury v. State*, 235 S.W. 901, 902 (Tex. Crim. App. 1921). A rational jury could have concluded beyond a reasonable doubt that Appellant committed the offenses of murder and engaging in organized criminal activity. We, therefore, overrule Appellant's fourth and fifth issues.

### *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

June 13, 2013                                                          JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

20