# NOS. 12-12-00428-CR
# 12-12-00429-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JARED TYRELL STINECIPHER,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *OPINION*

Jared Stinecipher appeals his convictions for accident involving personal injury or death (cause number 12-12-00428-CR) and criminally negligent homicide (12-12-00429-CR). We modify the judgment and affirm as modified in cause number 12-12-00428-CR. We affirm in cause number 12-12-00429-CR.

### BACKGROUND

A Smith County grand jury returned two indictments against Appellant for the offenses of accident involving personal injury or death and criminally negligent homicide. Both indictments alleged the use of a deadly weapon, namely, a motor vehicle. Appellant pleaded "guilty" to both offenses and "true" to the deadly weapon allegations without an agreement on punishment. A presentence investigation report was prepared and a sentencing hearing was held. The trial court found Appellant guilty of both offenses, found the deadly weapon allegations true, and assessed punishment for each case at imprisonment for ten years and no fine. The sentences were ordered to run concurrently. This appeal followed.

In his first issue, Appellant contends that his prosecution under both indictments resulted in multiple punishments for the same offense under a double jeopardy analysis. The State contends that Appellant failed to preserve this issue at the trial court level.

## Preservation of Error

Failure to present a timely and specific objection, request, or motion to the trial court for a ruling results in waiver or forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341-42 (Tex. Crim. App. 2004). The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

A defendant has the burden to "preserve, in some fashion" a double jeopardy objection at the trial court level. *See Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (en banc). But a double jeopardy claim may be raised for the first time on appeal when (1) the double jeopardy violation is clearly apparent on the face of the record, and (2) when enforcement of the usual rules of procedural default serves no legitimate state interests. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014) (citing *Gonzalez*, 8 S.W.3d at 643).

## Applicable Law

The Fifth Amendment's Double Jeopardy Clause protects an accused against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013). A multiple punishments violation can arise in the context of lesser included offenses and when the same conduct is punished under two distinct statutes where the legislature intended for the conduct to be punished only once. *Garfias*, 424 S.W.3d at 58. Legislative intent can be ascertained by analyzing the elements of the offense in question, or by identifying the "unit of prosecution" for the offenses. *Id.* When the offenses in question come from different statutory sections, as they do in this case, the legislative intent can be ascertained by analyzing the elements of the offenses in question. *See id.*

There are three steps to an "elements" analysis in determining legislative intent in the multiple punishments context. *Id.* at 58-60. First, the reviewing court must apply the *Blockburger* test to determine whether each of the offenses requires proof of an element that the other does not.[1] *Id.* at 58. Second, the court must consider a list of factors set forth by the court of criminal appeals in *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999), to determine whether two offenses are the same in the context of multiple punishments, i.e., whether the legislature intended two punishments for the same conduct. *See id.* at 59; *Bigon v. State*, 252 S.W.3d 360, 371 (Tex. Crim. App. 2008). And third, the court should determine the "allowable unit" of prosecution for the offenses in question. *Garfias*, 424 S.W.3d at 59. If, after conducting an analysis of each of these factors, it appears that the legislature did not intend multiple punishments, the reviewing court will consider whether enforcement of the usual rules of procedural default serves any legitimate state interest. *See Gonzalez*, 8 S.W.3d at 643.

**Discussion**

Appellant did not make a double jeopardy objection in the trial court. Therefore, we must determine whether a double jeopardy violation is apparent on the face of the record. The State contends that Appellant was convicted of two different offenses requiring different elements of proof, and as a result, a double jeopardy violation is not clearly apparent on the face of this record. We apply the *Garfias* elements analysis to determine whether the State is correct.

### The *Blockburger* Test

The *Blockburger* test is used to determine whether each of the offenses with which the accused is charged requires proof of an element that the other does not. *Garfias*, 424 S.W.3d at 58. Our focus is on the elements alleged in the indictments, and double jeopardy challenges may be made "even against offenses that have different statutory elements, if the same facts required to convict are alleged in the indictment[s]." *Id.* at 58-59.

Here, the indictment in cause number 12-12-00428-CR (accident involving personal injury or death) alleged that Appellant did then and there

> intentionally or knowingly drive a vehicle that became involved in an accident resulting in death to Arthur Dewayne Murphy, and the said defendant did thereafter, knowing said accident had occurred, intentionally or knowingly fail to render to Arthur Dewayne Murphy reasonable assistance when it was then apparent that Arthur Dewayne Murphy was in need of medical treatment [and]
>
> . . .

---

[1] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

> did then and there intentionally or knowingly drive a vehicle that became involved in an accident resulting in death to Arthur Dewayne Murphy, and the said defendant did thereafter, knowing said accident had occurred, intentionally or knowingly leave the scene of said accident, without giving his name, address, registration number of the vehicle the defendant was driving, or the name of the defendant's motor vehicle liability insurer to any person, and without rendering reasonable assistance to Arthur Dewayne Murphy when it was then apparent that Arthur Dewayne Murphy was in need of medical treatment. . . .

The indictment in cause number 12-12-00429-CR (criminally negligent homicide) alleged that Appellant did then and there

> by criminal negligence, cause the death of an individual, Arthur Dewayne Murphy, by operating a motor vehicle while disregarding a stop sign and failing to obey an official traffic control device. . . .

Both indictments alleged that Appellant used a motor vehicle as a deadly weapon during the commission of or immediate flight from the offense.

In cause number 12-12-00429-CR, the State was required to prove that Appellant "operat[ed] a motor vehicle while disregarding a stop sign and failing to obey an official traffic control device." The State was not required to prove this element in cause number 12-12-00428-CR. Instead, the State was required to prove that after knowing an accident had occurred, Appellant "intentionally or knowingly fail[ed] to render . . . reasonable assistance [and left] the scene of [the] accident, without giving his name, address, registration number of [his vehicle], or the name of [his] insurer. . . ." The indictment in each cause number required proof of an element that the other did not. *See, e.g.*, ***Ex parte Pritzkau***, 391 S.W.3d 185, 190 (Tex. App.—Beaumont 2013, pet. ref'd) (prosecution for criminally negligent homicide not barred by double jeopardy when defendant is convicted of underlying traffic offense). The offenses in the two indictments are not the same under a strict application of the ***Blockburger*** test, which is one indicator that the legislature intended to allow multiple punishments for accident involving personal injury or death and criminally negligent homicide. *See **Bigon***, 252 S.W.3d at 370.

### *The **Ervin** Factors*

We now consider the ***Ervin*** factors, which include

> whether offenses are in the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the

4

offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under ***Blockburger***; and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double[] jeopardy purposes.

*See **Garfias***, 424 S.W.3d at 59 (citing ***Bigon***, 252 S.W.3d at 371; ***Ervin***, 991 S.W.2d at 814). The most significant factor in determining legislative intent is the focus or "gravamen" of the offense. *See **Garfias***, 424 S.W.3d at 61.

Criminally negligent homicide is a result-oriented offense, with the gravamen of the offense being an individual's death. *See* TEX. PENAL CODE ANN. § 19.05(a) (West 2011) ("A person commits an offense if he *causes* the death of an individual by criminal negligence.") (emphasis added); *see also **Womble v. State***, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.] 1981).[2] However, the offense of accident involving personal injury or death is more akin to a conduct-oriented offense because it requires an operator of a vehicle involved in an accident to engage in certain conduct, and criminalizes his failure to do so. *See* TEX. TRANSP. CODE ANN. § 550.021(a), (c) (West Supp. 2013). The statute focuses on "the circumstances surrounding" an individual's conduct, with the gravamen of the offense being the individual's culpable mental state surrounding such circumstances, i.e., an operator's knowledge of the accident and knowledge of a victim's suffering an injury become criminal upon the operator's leaving the scene of the accident. *See **Huffman v. State***, 267 S.W.3d 902, 907-08 (Tex. Crim. App. 2008).

The indictments in this case illustrate the distinction between the two gravamina. Appellant's criminally negligent homicide indictment focused on Murphy's death, while the accident involving personal injury or death indictment focused on Appellant's leaving the scene of the accident. This factor indicates that the legislature intended to allow multiple punishments for the two offenses. *See **Garfias***, 424 S.W.3d at 60-61.

Other ***Ervin*** factors support the same conclusion. First, criminally negligent homicide and accident involving personal injury or death are not included in the same statutory section or even the same statutory code. Second, the offenses are not named similarly. And third, the

---

[2] "The distinction to be drawn in determining if the homicide is criminal is not whether the act is intentional or unintentional, but whether the act is voluntary or involuntary." ***Womble v. State***, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.] 1981) (citations omitted). "A person may act unintentionally and still commit a criminal offense, provided he acts with knowledge, recklessness[,] or negligence." ***Id.***

offenses have different punishment ranges.  *Compare* TEX. PENAL CODE ANN. § 19.05(b) *with* TEX. TRANSP. CODE ANN. § 550.021(c); *see also Garfias*, 424 S.W.3d at 61.  Application of the *Ervin* factors to this case indicates that the legislature intended multiple punishments for the conduct involved.

*Allowable Unit of Prosecution*

The last factor we consider in our analysis is the "allowable unit of prosecution" for the offenses, which determines if one course of conduct results in more than one offense.  *See id.* The allowable unit of prosecution for criminally negligent homicide is one offense per victim. *See Ex parte Amador*, 326 S.W.3d 202, 220 (Tex. Crim. App. 2010) (citations omitted).  The allowable unit of prosecution for accident involving personal injury or death is "each victim, each accident." *Huffman*, 267 S.W.3d 908.

**Conclusion**

The *Blockburger* test, the *Ervin* factors, and the allowable unit of prosecution for accident involving personal injury or death and criminally negligent homicide indicate that the legislature intended to allow multiple punishments.  As a result, a double jeopardy violation is not clearly apparent from the face of this record.  *See Garfias*, 424 S.W.3d at 58; *Gonzalez*, 8 S.W.3d at 643.  Appellant has not sustained his burden of presenting a record showing on its face a multiple punishments violation.  *Id.* at 642, 645.  Accordingly, we overrule Appellant's first issue.


## TRIAL COURT ADMONISHMENTS

In his second and third issues, Appellant contends that his guilty plea to the offense of criminally negligent homicide (cause number 12-12-00429-CR) was involuntary because the trial court admonished him on the incorrect range of punishment for the offenses.  The State contends that Appellant's plea was voluntary because the trial court corrected its admonishments.

**Standard of Review and Applicable Law**

When the voluntariness of a guilty plea is challenged on appeal, the reviewing court should examine the record as a whole.  *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (citations omitted).  A guilty plea is voluntary if the plea is the expression of the defendant's own free will, not induced by threats, misrepresentations, or improper promises. *State v. Guerrero*, 400 S.W.3d 576, 587 (Tex. Crim. App. 2013).

6

Before accepting a plea of guilty, the trial court must admonish the defendant of the proper range of punishment associated with the offense to which he entered his plea. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1) (West Supp. 2013). If the record does not affirmatively show an admonishment on the range of punishment, the guilty plea is invalid. *Ex parte Gibautich*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985) (en banc).

When the record shows an incorrect admonishment regarding an offense's range of punishment, the courts may nevertheless find the guilty plea valid. *See id.* ("[W]hen the record shows that the trial court gave an admonishment that was incomplete or incorrect, there is a *prima facie* showing of a knowing and voluntary plea of guilty."); *Grays v. State*, 888 S.W.2d 876, 878 (Tex. App.—Dallas 1994, no pet.) (defendant's being incorrectly admonished about the range of punishment "does not necessarily lead to the conclusion that the defendant was misled or harmed [because the] defendant's decision to plead guilty may not have been adversely affected at all by the incorrect admonishment"). This is because a trial court's "substantial compliance" with Article 26.13 is sufficient unless the defendant was not aware of the consequences of his plea and was misled or harmed by the trial court's admonishment. TEX. CODE CRIM. PROC. ANN. art. 26.13(c); *Martinez*, 981 S.W.2d at 197. Whether admonishments substantially comply with the statute is an issue that should be considered when the trial court has addressed the admonishment in some form or fashion. *Id.*

If a trial court has substantially complied with the requirements of Article 26.13, the defendant must show that, despite the trial court's substantial compliance, "he entered the plea without understanding the consequences of his action and thus was harmed." *Gibauitch*, 688 S.W.2d at 871.

### Discussion

On October 29, 2012, Appellant pleaded guilty to accident involving personal injury or death (cause number 12-12-00428-CR) and criminally negligent homicide (cause number 12-12-00429-CR). The trial court stated that the range of punishment for criminally negligent homicide was "a state jail felony, which means the range of punishment is six months to two years in the state jail and up to a $10,000 fine." The indictments in each case alleged the use of a deadly weapon to which Appellant pleaded true. The trial court found Appellant guilty and the deadly weapon allegation true in both cases.

7

The trial court conducted a sentencing hearing on December 18, 2012. After the State's second witness testified, the prosecutor informed the trial court that he "just realized" the punishment range for criminally negligent homicide would be treated as a third degree felony if the court made a deadly weapon finding.[3]

Appellant had already signed a document that stated the range of punishment was a fine not to exceed $10,000 and confinement for not more than two years or less than 180 days. The prosecutor corrected this document to show that the range of punishment for the offense was a "state jail felony with a deadly weapon—no less than 2 years and no more than 10 years with a fine not to exceed $10,000." The trial court then explained to Appellant that the previous admonishment was incorrect and that the correct punishment range for criminally negligent homicide would be that of a third degree felony due to the deadly weapon finding. Thus, the trial court explained that the punishment would be "similar to your other case, which is the two years to ten years in the penitentiary and a fine of up to $10,000." Appellant confirmed that he understood the punishment range and initialed the changes made to the State's "Acknowledgment of Admonishments." The trial court and Appellant then engaged in the following discourse:

> Court: And the State has offered [the Acknowledgement of Admonishments]. Your lawyer indicated that he has no objections to it under these circumstances, which, the Court will admit it. However, I always try to go back, whenever there's been some type of punishment enhancement that maybe we didn't discuss at the time you entered your plea, to make sure that is what you wanted to do now that there's been a change. You've entered a plea of guilty and a plea of true in this case. Do you still wish to stand on that plea of guilty and plea of true that you made back in October?
>
> Appellant: Yes, sir.
>
> Court: All right. Because I'll be happy, under these changes, since you didn't know about it back when you were doing it, then I will let you withdraw your plea of guilty, proceed to trial on this charge, see what a jury would do, if that's what you want to do in this case.

---

[3] *See* TEX. PENAL CODE ANN. § 12.35(c)(1) (West Supp. 2013) ("An individual adjudged guilty of a state jail felony shall be punished for a third degree felony if it is shown on the trial of the offense that . . . a deadly weapon . . . was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense[.]").

The punishment range for a third degree felony is imprisonment in the Texas Department of Criminal Justice for any term of not more than ten years or less than two years and a possible fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.34 (West 2011).

Appellant:  No, sir.

Court:  You want to go forward as we're doing today?

Appellant:  Yes, sir.  I'm just ready to get it done with.

Court:  And you had a little bit of time to talk to Mr. Jarvis about that.  Need any more time to visit with him on that issue before we move forward?

Appellant:  No, sir.

Court:  You're sure this is what you wish to do?

Appellant:  Yes, sir.

Court:  All right.  State's 1 is admitted with these changes.  And the record will reflect that we've now corrected the punishment range, not the offense.  Offense doesn't change, but the punishment range will be the same in both cases, that being a third[] degree felony level.

Based upon our review of the record, we hold that the trial court's improper admonishments regarding the range of punishment in cause number 12-12-00429-CR did not render Appellant's guilty plea invalid.  Once the error was recognized, the trial court halted the proceedings, informed Appellant of the error, gave the correct range of punishment, and advised Appellant that he had the option of withdrawing his guilty plea in light of the court's previous mistake.  Appellant's responses to the trial court's inquiry indicate that Appellant's decision to maintain his plea of guilty and proceed with sentencing was voluntary and not induced by threats, misrepresentations, or improper promises.  *See Guerrero*, 400 S.W.3d at 587.  The trial court's corrective measures in admonishing Appellant of the correct punishment range upon learning of the mistake substantially complied with Article 26.13(a)(1) of the code of criminal procedure.  *See Martinez*, 981 S.W.2d at 197.  Appellant has failed to show that his decision to maintain his plea of guilty was made without understanding the consequences of his action, and has also failed to show that he was harmed by maintaining his guilty plea in light of the trial court's corrected admonishments.  *See Gibauitch*, 688 S.W.2d at 871.  Accordingly, we overrule Appellant's second and third issues.

### ATTORNEY'S FEES

In his fourth and fifth issues, Appellant contends that it was error for the trial court to impose court costs not supported by legally sufficient evidence and by ordering that funds be withdrawn from his inmate trust account.  Appellant's specific challenge relates to the

9

assessment of attorney's fees in cause number 12-12-00428-CR. Appellant contends that the attorney's fees should be deleted because he is indigent. The State agrees.

**Standard of Review and Applicable Law**

The imposition of court costs upon a criminal defendant is a "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Johnson v. State,* 423 S.W.3d 385, 390 (Tex. Crim. App. 2014) (citations omitted). When the imposition of court costs is challenged on appeal, we review the assessment of costs to determine if there is a basis for the cost, not to determine if there is sufficient evidence offered at trial to prove each cost. *Id.*

A trial court has the authority to assess attorney's fees against a criminal defendant who received court-appointed counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2013). But once a criminal defendant has been determined to be indigent, he "is presumed to remain indigent for the remainder of the proceedings unless a material change in his financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2013). Before attorney's fees may be imposed, the trial court must make a determination supported by some factual basis in the record that the defendant has the financial resources to enable him to offset in part or in whole the costs of the legal services provided. *See Johnson v. State*, 405 S.W.3d 350, 354 (Tex. App.—Tyler 2013, no pet.) (citations omitted). If the record does not show that the defendant's financial circumstances materially changed, the evidence will be insufficient to support the imposition of attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *Mayer v. State*, 309 S.W.3d 552, 553, 557 (Tex. Crim. App. 2010); *Johnson*, 405 S.W.3d at 354.

**Discussion**

The judgment of conviction in cause number 12-12-00428-CR assesses $602.00 as court costs and contains a withdrawal order reflecting the same amount. The bill of costs includes the assessment of attorney's fees in the amount of $300.00.

The record shows that the trial court twice determined that Appellant was indigent—by appointing counsel to represent Appellant both before and after his guilty plea. The record does not show that the trial court ever made any finding that Appellant's financial circumstances had materially changed. Thus, there is no basis in the record to support the imposition of attorney's fees as court costs. *See Johnson*, 423 S.W.3d at 390; *Johnson*, 405 S.W.3d at 355. We sustain Appellant's fourth and fifth issues.

10

<u>**DISPOSITION**</u>

Having sustained Appellant's fourth and fifth issues, we ***modify*** the trial court's judgment in cause number 12-12-00428-CR to reflect that the amount of court costs is $302.00. *See* TEX. R. APP. P. 43.2(b). We also modify Attachment A in cause number 12-12-00428-CR to delete the assessment of attorney's fees and to state that the total amount of "court costs, fees and/or fines and/or restitution" is $302.00. We ***affirm*** the judgment in cause number 12-12-00428-CR ***as modified***. *See* TEX. R. APP. P. 43.2(b). Having overruled Appellant's first, second, and third issues, we ***affirm*** the judgment of the trial court in cause number 12-12-00429-CR.

<u>**SAM GRIFFITH**</u>
Justice

Opinion delivered July 23, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 23, 2014

NO. 12-12-00428-CR

**JARED TYRELL STINECIPHER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0811-12)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified to** reflect that the amount of court costs is $302.00; we also modify Attachment A in cause number 12-12-00428-CR to delete the assessment of attorney's fees and to state that the total amount of "court costs, fees and/or fines and/or restitution" is $302.00; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Sam Griffith.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JULY 23, 2014

### NO. 12-12-00429-CR

**JARED TYRELL STINECIPHER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0812-12)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **affirmed**; and that this decision be certified to the trial court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*