**REVERSED and REMANDED and Opinion Filed September 13, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00280-CR

## EX PARTE CHRISTOPHER RION

On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. WX18-90101-L

# MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

Christopher Rion appeals the trial court's order denying his pretrial application for writ of habeas corpus. In his sole issue, appellant contends the trial court erred and abused its discretion in denying his writ application because collateral estoppel prohibits the State from trying him for aggravated assault with a deadly weapon after he was acquitted for manslaughter. We reverse the trial court's order and remand the case to the trial court.

### BACKGROUND

On August 1, 2015, appellant was involved in a two-vehicle collision at a busy intersection. At the time of the collision, appellant was driving alone in his Dodge Challenger. The two occupants in the other vehicle—a Toyota Highlander—were both injured in the crash. The passenger in the Toyota succumbed to her injuries within a few days.

Subsequently, the State charged appellant with manslaughter and aggravated assault with a deadly weapon. The indictment for manslaughter alleged appellant did:

recklessly cause the death of an individual, [C.P.], hereinafter called deceased, by OPERATING A MOTOR VEHICLE AT A SPEED NOT REASONABLE OR PRUDENT FOR THE CONDITIONS THEN EXISTING, AND BY FAILING TO CONTROL THE SPEED OF SAID MOTOR VEHICLE, AND BY FAILING TO KEEP A CLEAR LOOKOUT AND CONTROL OF SAID MOTOR VEHICLE, THEREFORE STRIKING THE MOTOR VEHICLE OCCUPIED BY DECEASED, And it is further presented in and to said Court that a deadly weapon, to wit: A MOTOR VEHICLE, was used and exhibited during the commission of the aforesaid offense.

The indictment for aggravated assault charged appellant did:

unlawfully then and there intentionally, knowingly and recklessly cause bodily injury to [C.L.], hereinafter called complainant, by OPERATING A MOTOR VEHICLE AT A SPEED NOT REASONABLE OR PRUDENT FOR THE CONDITIONS THEN EXISTING, AND BY FAILING TO CONTROL THE SPEED OF SAID MOTOR VEHICLE, AND BY FAILING TO KEEP A CLEAR LOOKOUT AND CONTROL OF SAID MOTOR VEHICLE, THEREFORE STRIKING THE MOTOR VEHICLE OCCUPIED BY COMPLAINANT, and said defendant did use and exhibit a deadly weapon, to wit: A MOTOR VEHICLE, during the commission of the assault.

Over appellant's objection, the State elected to try the offenses separately.

On April 24, 2018, a jury trial commenced in the manslaughter case. During the trial, the basic facts of the case were undisputed. The accident occurred during the evening rush hour on a clear day in front of many witnesses. The State called several witnesses, including the surviving victim, C.L. The State's witnesses gave consistent accounts of the events that transpired. The evidence showed C.L.'s Toyota was stopped at a red light waiting to make a left turn when appellant's Dodge, traveling in the opposite direction at high speed, jumped the median, swerved to avoid a light pole, and crashed head-on into C.L.'s vehicle with such a hard impact that the Toyota was propelled backward 200 feet. The speed limit at the site of the accident was forty miles per hour. The airbag module event data recorder retrieved from appellant's car showed he was traveling seventy-one miles per hour when the accident occurred and the accelerator pedal was pressed to the floor until the moment of impact.

After the accident, appellant was briefly unconscious and upon reviving, stated he needed to get away and that his friend was actually driving even though appellant was alone in the car. Appellant did attempt to leave the scene and was apprehended by an off-duty police officer while trying to climb a gate into a nearby apartment complex. A witness close enough to see appellant's eyes testified his pupils were dilated. Witnesses who looked into appellant's vehicle saw a can of aerosol keyboard cleaner on the floor board. No one smelled alcohol on appellant's breath, and he passed field sobriety tests. A paramedic treating the victims thought both would live, so appellant was not required to give a sample of his blood for intoxication screening.

The defense did not press the witnesses to try to undermine their credibility. Instead, the defense focused on establishing that no witnesses could contradict appellant's account that he had just come from Walmart where he had purchased groceries that were locked in his trunk. The defense also obtained admissions from witnesses that they did not know why appellant was speeding and that crashes may happen for reasons other than driver recklessness, such as heart attacks, diabetic comas, or for mental health reasons.

After the State presented its case, the defense asked for a directed verdict on the ground the State had failed to prove the element of recklessness and asked for the deadly weapon allegation to be withdrawn. The State responded that it had shown recklessness because appellant was driving seventy-one miles per hour in a forty-mile-per-hour traffic zone. The motion was denied.

The defense presented three witnesses: appellant, a psychiatrist who had evaluated appellant, and appellant's father. Appellant testified he has suffered from mental illness since childhood. He has been diagnosed as having attention deficit hyperactivity disorder (ADHD), obsessive compulsive disorder, major anxiety, and major depression. He takes multiple prescribed medications that are constantly being shifted as the effectiveness of the existing regimen wanes. At the time of the accident, appellant was taking Adderal, Ambien, Lexapro, and Valium. All of

these medications were prescribed for him and he was taking the correct doses at the correct times. He had been on all of these medications for an extended period of time and had never been told that he should not drive. Appellant denied drinking or taking any drugs not prescribed by a physician. He had been driving since he was sixteen years old and had never had accidents, had his license taken away, or been advised not to drive. He has never been in trouble for speeding or drinking and driving. Until the accident, he had never had an episode where he thought he could not drive. Because of his mental illness, appellant was not working and spent most of his time in his apartment. When he would leave, he used GPS to navigate to his destination even if he was familiar with the route. His parents provided him with money to live on and they purchased his car for him.

Appellant testified that he had no recollection of driving or the accident. He drove to Walmart because it was the closet grocery store to his apartment. He waited until 3:00 p.m. to leave because that was the first time all day he felt secure enough to venture out. At Walmart, he purchased a month's supply of groceries and was anxious about the size of the bill. He testified he uses the aerosol keyboard cleaner in his car to blow cigarette ashes off the dashboard. He smokes because the cigarettes calm him down. He admitted trying to leave the scene of the accident because the crowd was hostile and made him anxious.

Appellant testified he has not driven since the accident and uses Uber drivers to get around. He becomes very anxious in cars. Since the accident, he has been diagnosed with post-traumatic stress disorder and a bipolar condition. At one point, he started drinking and wanted to kill himself. He has stopped drinking and has moved into a shared home with seven other people who are also mentally ill. Appellant testified he never intended to harm anyone and did not feel he was being reckless by driving to the store to buy groceries. Appellant expressed remorse for the accident.

Dr. Lisa Clayton testified she is a psychiatrist who has testified in the past for both the prosecution and the defense in various cases. The defense hired her to evaluate appellant. Dr. Clayton testified she had diagnosed appellant with generalized anxiety disorder with panic attacks, bipolar disorder, depression, and ADHD. Clayton testified that some panic attacks could be so severe they become a psychotic episode in which the victim suffers a break from reality. Clayton testified a patient like appellant would need frequent adjustments to his medications which would work for a while and then stop. Clayton denied appellant was faking his illnesses, but she admitted she had seen appellant only three times.

Roger Rion, appellant's father, denied that appellant was faking mental illness and testified appellant had been treated for mental illness since he was nine years old. Rion testified appellant was isolated with only a few friends, that appellant found it difficult to leave the house, that he had disappeared several times, and he had attempted suicide. Rion testified the medications prescribed for appellant seemed to be a matter of trial and error. Rion confirmed that he had bought appellant's car for him. Rion described appellant as a timid driver, very careful, and needing to follow routines. Rion testified appellant was bruised badly in the accident but would not seek medical attention. Rion testified appellant had applied for social security disability benefits, but was rejected.

After the testimony, the trial court charged the jury on manslaughter and, over appellant's objection, the lesser-included offense of criminally negligent homicide. During closing arguments, the State told the jury that this was not an intentional act and that appellant did not intend to kill C.P. The State argued appellant was not negligent or careless, but was reckless. According to the State, the evidence showed appellant was aware of a substantial risk of harm and chose to disregard that risk:

> because he just wanted to speed, because he wanted to see how fast or how quickly his car could go from zero to however miles per hour or if he got behind the wheel

knowing he's on a number of prescription medications: Valium, Adderall, a number of—Lexapro—a number of different medications, that's reckless, too. . . . Either this man gunned it down the road and took the life of someone else and someone else's family, because he wanted to speed; or he took too many medications, mixed them up and then decided to drive. That's still a conscious disregard. He was aware of his actions. He knew it was wrong. That's what recklessness is.

The State briefly discussed causation and why the car would be considered a deadly weapon. The State questioned why appellant did not put on additional evidence of his mental illnesses rather than rely upon the testimony of a doctor who had seen him three times.

The defense began its argument by acknowledging the pain of the victims' family and reminded the jury that what happened was an accident. The defense described appellant as honest, forthright, respectful, and remorseful. The defense reminded the jury of Roger Rion's testimony about appellant being a timid driver with no traffic tickets. The defense argued this was the only time appellant had ever suffered a "break." The defense reminded the jury that after the accident, appellant was suicidal, gave up driving, and stayed home. The defense went into the meaning of "reckless" as charged in depth. The defense derided the State's concern about appellant's groceries, the racing stripe on his car, the aerosol canister on the floor, and the speakers in the car. The defense asked the jury to consider whether appellant, Dr. Clayton, and appellant's father were "fakers" or liars. The defense emphasized that there was no evidence appellant was intoxicated. The defense lamented the treatment and lack of compassion for the mentally ill and suggested the State had treated appellant's illness insensitively. The defense contended the State was seeking vengeance and not justice. The defense did not contest the evidence of appellant's driving.

After the defense finished its presentation, the prosecutor questioned appellant's credibility and briefly recounted the evidence about appellant's driving.

After the jury acquitted him, appellant filed an application for writ of habeas corpus arguing a number of issues, including that the second prosecution for aggravated assault is subject to collateral estoppel because relevant facts were necessarily decided in the manslaughter case. The

relevant facts appellant identified were the basic facts of the accident: the time and location of the accident, the lack of intoxication, the driving actions appellant took and the speed in excess of the posted speed limit, and the results of the accident to the vehicles and the victims. Appellant contended these facts form an essential element of aggravated assault with a deadly weapon. Appellant contended the facts he described were ultimate facts that cannot again be litigated in his pending prosecution. At the conclusion of his collateral estoppel argument, appellant added, "And, the jury already found that Defendant did **not** act recklessly. So even if a future jury were to find that Defendant acted recklessly or with criminal negligence, facts that support such a finding were already found in the negative by the prior jury."

The trial court denied relief and entered findings of fact and conclusions of law proposed by the State. On the issue of collateral estoppel, the trial court found the facts appellant contended were ultimate facts were not in dispute during the manslaughter trial, which focused instead on appellant's mental state. The trial court concluded the facts about appellant's driving were not decided in either party's favor and could be litigated in a second trial. Thus, it denied relief on appellant's collateral estoppel claim regarding the facts. Regarding the issue of appellant's mental state, the trial court found that the issue of whether appellant disregarded a substantial and unjustifiable risk that C.P. would die as a result of his conduct is not the same as the issue of whether appellant disregarded a substantial and unjustifiable risk that C.L. would suffer bodily injury as a result of his conduct. Because the issues would not be precisely the same in the first and second trials, the trial court concluded the issue of appellant's mental state is not subject to collateral estoppel. The trial court denied relief. Appellant then appealed raising only the collateral estoppel issue from his habeas application.

## STANDARD OF REVIEW

An applicant for habeas corpus relief must prove the applicant's claims by a preponderance of the evidence. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

In reviewing the trial court's order, we view the facts in the light most favorable to the trial court's ruling, and we uphold the ruling absent an abuse of discretion. *Id.*; *Ex parte Paxton*, 493 S.W.3d 292, 297 (Tex. App.—Dallas 2016, pet. ref'd).

The trial court, as fact finder, is the exclusive judge of witness credibility. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We afford almost total deference to a trial court's factual findings when those findings are based upon credibility and demeanor. *Id.*; *Paxton*, 493 S.W.3d at 297. If, however, the trial court's determinations are questions of law, or else are mixed questions of law and fact that do not turn on an evaluation of witnesses' credibility and demeanor, then we owe no deference to the trial court's determinations and review them *de novo*. *State v. Ambrose*, 487 S.W.3d 587, 596–97 (Tex. Crim. App. 2016); *Paxton*, 493 S.W.3d at 297. "A decision to apply collateral estoppel is a question of law, applied to the facts, for which *de novo* review is appropriate." *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

## COLLATERAL ESTOPPEL

The doctrine of collateral estoppel arises from the Fifth Amendment's bar against double jeopardy. *Ex parte Watkins*, 73 S.W.3d 264, 267 (Tex. Crim. App. 2002). Collateral estoppel arises "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). In the criminal law context, the doctrine operates to prevent the State from contesting in any subsequent proceedings between the parties any discrete fact the jury necessarily determined in a criminal defendant's favor. *Watkins*, 73 S.W.3d at 268.

–8–

To determine whether collateral estoppel applies to a subsequent prosecution, courts use a two-step analysis: (1) determining exactly what facts were necessarily decided in the first proceeding; and (2) whether those necessarily decided facts constitute essential elements of the offense in the second trial. *Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002).

To determine whether a jury necessarily found a fact in a defendant's favor and the scope of the findings regarding specific historical facts that may not be litigated again in a second criminal trial, a reviewing court must not adopt a hypertechnical approach, but rather consider with realism and rationality the entire trial record, the pleadings, the charge, and the arguments of counsel. *Ashe*, 397 U.S. at 444; *Taylor*, 101 S.W.3d at 441–42; *Watkins*, 73 S.W.3d at 268–69.

Collateral estoppel applies only to cases where the legal and factual situations are identical and it may apply to a phase, issue of fact, or congeries of fact. *Taylor*, 101 S.W.3d at 441. A party may not avoid application of the doctrine simply by advancing new or different evidence on an issue already litigated between the parties. *Id*.

"A general verdict returned in the guilt phase of a criminal trial frequently makes it difficult to determine precisely which historical facts a jury found to support an acquittal." *Watkins*, 73 S.W.3d at 269. The defendant bears the burden to demonstrate that the issue the defendant seeks to foreclose was actually decided in the first proceeding. *Guajardo v. State*, 109 S.W.3d 456, 460 (Tex. Crim. App. 2003).

Appellant was tried for manslaughter and criminal negligence. A person commits manslaughter if he or she recklessly causes the death of another. TEX. PENAL CODE ANN. § 19.04; *Shroeder v. State*, 123 S.W.3d 398, 400–01 (Tex. Crim. App. 2003). Under the penal code:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c).

A person commits criminally negligent homicide if the person causes the death of an individual by criminal negligence. *Id.* at 19.05(a); *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005).

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d). The jury charge submitted by the trial court closely tracks the statutory definitions.

Appellant now stands accused of aggravated assault. Under the facts of this case, a person commits aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §§22.01(a)(1), 22.02(a).

In applying the mental states described in § 6.03, the mental state may apply to: (1) the nature of the conduct; (2) the result of the conduct; or (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). All three offenses at issue in this case are "result of conduct" offenses. *See Shroeder*, 123 S.W.3d at 400–01 (manslaughter is a "result of conduct" offense in which recklessness must go to the conduct causing the death); *Stinecipher v. State*, 438 S.W.3d 155, 161–62 (Tex. App.—Tyler 2014, no pet.) (criminally negligent homicide is a result-oriented offense with the gravamen of the offense being an individual's death); *Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008) (aggravated assault is also a result-of-conduct offense).

–10–

The jury's determination of a culpable mental state is usually based upon inferences the jury draws from the attendant circumstances. *See Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989).

*What Facts Were Necessarily Decided*

Turning to the first step of the collateral estoppel analysis, appellant contends the following facts were necessarily decided by the jury in his first trial:

- On August 1, 2015 at about 5:30 p.m., an accident occurred on the 5400 block of Arapaho in Dallas at the intersection with Prestonwood involving a Dodge driven by Appellant and a 2006 Highlander driven by [C.L.]. Appellant failed to drive in a single lane of traffic, crossed over into the eastbound lane, jumped the median, and collided into the front of the Highlander.

- At the time of impact, Appellant was driving about 71 miles-per-hour. The speed-limit on that section of Arapaho is 40 miles-per-hour.

- The impact caused the Highlander to travel backwards about 200 feet and stopping on the sidewalk in the 5500 block of Arapaho. The Highlander was facing westbound and the Dodge was facing southbound. The impact caused non-life-threatening injuries to [C.L.] and life-threatening injuries to [C.P.] who was riding in the front passenger-seat. Four days later, [C.P.] passed away at the Medical Center of Plano. (Record references omitted).

Appellant further contends that the jury necessarily decided he was not guilty of the mens rea of recklessness.

The State disagrees that any of the facts appellant identifies were ultimately decided by the jury because they were uncontested at trial. We agree with the State that such facts were not necessarily determined against the State as appellant suggests. *See Taylor*, 101 S.W.3d at 440.

Appellant further contends that the issue of whether he acted with the necessary mens rea of recklessness required to convict him of manslaughter was an ultimate issue decided by the jury. The State responds that appellant failed to prove his mental state was the ultimate issue at trial because appellant put forth evidence to support theories that as a safe and careful driver, appellant could not have been speeding; that appellant was unaware of the risk; and that appellant suffered

–11–

a blackout caused by a panic attack that absolved him from criminal responsibility for the accident. We disagree that these are three separate theories.

The defense did not put forward the evidence that appellant was a safe and careful driver to challenge the State's evidence of his speeding. Instead, such evidence was introduced to buttress the defense contention that appellant's apparent reckless behavior resulted from a temporary mental health breakdown rather than an intent to drive recklessly.

Similarly, the State's argument that defense counsel raised in final argument a separate issue regarding whether appellant was aware of the risk ignores the context of defense counsel's statements. During final argument, defense counsel argued:

> As I told you, I don't like lawyer language. But, we have to talk about it. When you look at reckless—this is page two of the Charge—you look at it from the standpoint of the person charged. The standpoint of the person charged is not the State. It's not some of the other folks that are looking at you, some of the other prosecutors that are watching us, it's from [appellant's] point of view. Was [appellant] actually aware of the risk? What evidence did you hear, any of you all, that he's ever had a break before; that he's aware of it; that he's had 20, 30 speeding tickets, red light tickets, he's not actually aware of anything and consciously disregards? . . . That means that you have to be willful in your actions. . . . You have to be aware of it. There has to be some type of forewarning. There has to be some type of element beforehand, and that didn't happen. Again, as tragic as this is, it's simply not reckless. It's simply not an offense.

The argument defense counsel made did not raise a separate ground for acquitting appellant but rather again buttressed the defense theory that appellant suffered a mental breakdown that rendered him not criminally liable for his conduct. Reading the record with the realism and rationality required by the standard of review, the jury was tasked to determine whether, as the State contended, appellant deliberately drove recklessly and caused C.P.'s death or, as the defense contended, he suffered a psychotic breakdown and never had the necessary mens rea of recklessness.

Although not controlling in this case, we consider *Taylor* instructive. In *Taylor*, the defendant's two passengers died after the defendant lost control of his car and collided with another

vehicle. *See Taylor*, 101 S.W.3d at 436. The defendant was charged with intoxication manslaughter for the death of one passenger with the indictment alleging he was intoxicated with alcohol. *Id*. After a jury acquitted him, the State sought to prosecute him for the death of the other passenger on a charge of intoxication manslaughter alleging the defendant was intoxicated by either alcohol and marijuana or marijuana alone. *Id*. The defendant filed a pretrial application for writ of habeas corpus contending collateral estoppel barred any further prosecutions based upon intoxication. *Id*. at 439. The trial court denied relief concluding the jury in the first trial determined only the issue of intoxication with alcohol. Before the court of criminal appeals, the court determined that the jury necessarily concluded appellant was not intoxicated by alcohol and did not drive recklessly at an excessive speed into another vehicle. *Id*. at 442. Analyzing the trial record, the court observed,

> The *source* of appellant's intoxication was not a disputed fact in the first trial. It was only the more general issue of intoxication was he or wasn't he that was disputed, and upon this issue, the appellant prevailed. Had appellant's defense been one of conceding the *fact* of intoxication, but contesting the *manner* in which he became intoxicated, the situation would, of course, be different.

*Id*. at 443.

As in *Taylor*, the present case requires a close reading of the record focusing on the defense raised and a determination of the scope of the jury's finding. In the present case, the jury was given a choice between the State's interpretation of events, that appellant made a conscious decision to drive at a high rate of speed, lost control of his car, and killed C.P., or the defense's version, which conceded he was speeding and lost control of his car, but explained he was suffering from an unexpected psychotic break and is blameless for the accident. The jury chose the defense's explanation of events and thus necessarily determined that appellant lacked the mens rea of recklessness necessary to convict him of manslaughter or criminal negligence.

Viewing the full record from the trial, we conclude the ultimate issue the jury decided was that appellant did not recklessly cause the death of C.P by consciously disregarding a substantial and unjustified risk that his conduct in driving seventy-one miles per hour in a forty-mile-per-hour zone and losing control of his vehicle causing it to cross the median and striking C.L.'s vehicle would result in C.P.'s death. By not convicting appellant of the lesser-included offense of criminally negligent homicide, the jury further necessarily concluded that appellant did not fail to perceive a substantial and unjustifiable risk that C.P.'s death could result from his conduct.

*Necessarily Decided Facts as Essential Elements*

Turning to the second factor in our collateral estoppel analysis, appellant contends the necessarily decided fact that he did not act recklessly is an essential element of the State's case for aggravated assault because it is the least of the three mental states the State has the option to prove for aggravated assault and there is no evidence that he intentionally or knowingly caused the accident.

The State contends that because all three of the relevant offenses—manslaughter, criminally negligent homicide, and aggravated assault—are "result of conduct" offenses, a second prosecution would not be subject to collateral estoppel because the issue of appellant's mental state would be different in the aggravated assault case. The State contends the issue of whether appellant disregarded a substantial and unjustifiable risk that C.P. would die as a result of his conduct is different from the issue of whether he disregarded a substantial and unjustifiable risk that C.L would suffer bodily injury as a result of his conduct.

The State asks us to engage in the sort of hypertechnical analysis disapproved in *Ashe*. *See Ashe*, 397 U.S. at 444 ("the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality."). Using the State's very restrictive analysis would amount to a rejection of any use

–14–

of collateral estoppel in criminal proceedings where the first judgment rested upon a general verdict of acquittal. *See Murphy v. State*, 239 S.W.3d 791, 794 (Tex. Crim. App. 2007). The jury's necessary determination was that appellant lacked the *mens rea* to be reckless with regard to the conduct causing the accident that resulted in C.P.'s death and C.L.'s injuries.

An aggravated assault may be committed intentionally, knowingly, or recklessly. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a). The current indictment against appellant charges all three possible mental states. Although the State conceded there was no such evidence in its final argument to the jury, we cannot conclude it is collaterally estopped from trying appellant for intentionally or knowingly causing the accident. However, if the State pursues the aggravated assault charge against appellant on a theory that he was reckless, then the precise issue raised, litigated, and finally determined in appellant's favor in the manslaughter case—that appellant was not reckless in driving seventy-one miles per hour, losing control of his vehicle, and causing a collision—would be an essential element of the offense in the second trial. *See Id*. §§ 22.01(a)(1), 22.02(a); *Taylor*, 101 S.W.3d at 440.

## CONCLUSION

We conclude the trial court abused its discretion in denying the relief requested by appellant on the issue of whether the State may try him for aggravated assault under a theory that he was reckless in causing the accident. We conclude that the issue of appellant's recklessness in causing the accident is subject to collateral estoppel. *See Taylor*, 101 S.W.3d at 440.

Accordingly, we reverse the trial court's order denying appellant's pretrial writ of habeas corpus and we remand this case to the trial court for further proceedings consistent with this opinion.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190280F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE CHRISTOPHER RION

No. 05-19-00280-CR

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. WX18-90101-L.
Opinion delivered by Justice Whitehill, Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the order of the trial court denying relief on appellant's pretrial application for writ of habeas corpus is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered September 13, 2019